# EXHIBIT 1

| | |
|---|---|
| **Date :** | Friday, 17 April 2020 22:09:43 |
| **From :** | Triworld Shipping Services - Uzcategui, Daniel (daniel@tss-ny.com) |
| **To :** | Ortiz, Jorge  /  CC: Stefano Palanca  -  Chartering Triworld  -  ops@sogem.mc  -  ops@tss-ny.com |
| **Subject :** | HANZE GENDT / DURON – FIXTURE RECAP – CP DTD 4-17-20 |

JORGE/DANIEL

**HANZE GENDT / DURON – FIXTURE RECAP – CP DTD 4-17-20**

PLSD TO CONFIRM FULLY CLEAN FIXED BETWEEN DURON LLC AS CHRTRS AND KONDOT S.A. AS DISPONENT OWNERS PER FOLL TERMS AND CONDS AGREED TDY:

MV "HANZE GENDT"
NETHERLANDS / 2012 - ICE CLASS
DWT/DRAFT 34,751 MT DWT / 10.10 M SSW
LOA/BEAM 180.00M / 30.00M
GRT/NRT 24,210/11,618 MT
GRAIN/BALE: 46,732/45,684 CBM
HO/HA : 5/5 - GEARS : 4X30MT
DEPTH MOULDED: 14.7M
ADA

VSL ETA GALVESTON 22 APRIL, AGW WP UCE WOG

DISPONENT OWNERS:         KONDOT S.A Hunkins Waterfront Plaza, Suite 556. Main Street. Charlestown, Nevis
DISPONENT OWNERS P&I:     THE CHARTERERS CLUB
LAST THREE CGOES:         FERTS / GRAINS / FERTS
LAST THREE PORTS:         PTO CORTES/NEW ORLEANS/HAVANA
TC CHAIN:                 HANZEVAST SHIPPING 3 BV / POLA MARITIME / KONDOT

OWNERS HAVE THE RIGHT TO SUBSTITUTE THE VESSEL UP TO 12:00 HRS  NYT **7** CALENDAR DAYS PRIOR TO VESSEL ETA TO LOAD PORT, VESSEL TO ARRIVE WITHIN LAYCAN AGREED BUT NOT EARLY THAN ETA OF THE INITIAL NOMINATED VESSEL. ALL VESSEL NOMINATIONS/SUBSTITUTIONS TO BE SUBJECT TO CHARTERERS/SHIPPERS/RECEIVERS CONFIRMATION/APPROVAL WITHIN NEXT 24 HRS SSHEX AFTER RECEIVING SAME WITHIN NY OFFICE HOURS 08:00 - 16:00 SATSHEX AND SAME NOT TO BE UNREASONABLY WITHHELD AND ONCE ALL VSL'S CERTIFICATES, GA PLAN, LAST 5 CARGOES, BALTIC QUESTIONNAIRE (IF AVAILABLE) AND WLTHC DISTANCES ON ARRIVAL AND DEPARTURE AS PER BELOW.

ON NOMINATION, OWNERS TO ADVISE:
- FULL DESCRIPTION:
- HATCH SIZES:
- HATCH TYPE:
- CLASS/P+I CLUB:
- IMO NUMBER:
- NUMBER OF HATCHES AND HOLDS:
- LAST THREE CARGOES:
- LAST THREE PORT CALLS:
- GA PLAN -
- INTENDED CARGO INTAKE AND STOW PLAN TO BE RECONFIRMED BY MASTER:

+++

- OTHER REQUIREMENTS AS PER LOADING CONDITIONS

OWNERS CONFIRM VESSEL TO BE/HAVE:

- MAX 6 HO/HA
- MAX 15 YRS

- GEARED WITH MINIMUM 4 X 30 MT CRANES, SAME TO SERVICE ALL HOLDS WHERE CARGO IS STOWED, EACH CRANE SERVING AT LEAST  4 HATCHES SIMOULTANEOUSLY AND INDEPENDENTLY. OWNERS WARRANT THAT VSLS GEAR CAN MAINTAIN THIS LIFTING CAPACITY EVEN WHEN ALL GEAR WORKING SIMULTANEOUSLY (OWNERS TO CONFIRM AT LEAST 4 VESSEL CRANES CAN WORK SIMULTANEOUSLY)

- CLASSED HIGHEST LLOYDS OR EQUIVALENT BY A MEMBER OF THE IACS FOR ENTIRETY OF VOYAGE

- FULLY ISM AND P+I COVERED FOR THE DURATION OF THE VOYAGE
- NO CENTERLINE BEAM/BULKHEADS/FITTINGS/OBSTRUCTIONS IN HOLDS
- VSL TO BE FULLY SUITABLE FOR GRAB DISCHARGE
- VSL TO BE SUITABLE IN ALL RESPECTS FOR ALL LOAD AND DISCHARGE PORTS/BERTHS/FACILITIES INCLUDING BUT NOT LIMITED TO LOA/BEAM/DRAFT/GEAR/WLTHC
- OWNERS TO SATISFY THEMSELVES REGARDING THE PREVAILING REGULATIONS, REQUIREMENTS AND RESTRICTIONS AT THE LOADING AND DISCHARGING PORT(S), ANCHORAGE(S) AND FACILITI(ES) / TERMINAL(S), AND THEY CONFIRM THAT THEY ARE CONVERSANT WITH THE TRADE.
- NO CARGO COMMINGLING ALLOWED
- WHARPING ALONGSIDE SHIPPER'S BERTH FOR CHARTERERS TIME AND ACCOUNT.
- NO WELDING OR CUTTING TO BE PERFORMED ONBOARD AS LONG AS OUR CARGO IS ONBOARD.
- OWNERS TO WARRANT HOLDS TO BE CLEANED, FREE OF ANY MATERIAL, ODORS THAT MAY CONTAMINATE THE CARGO. OTHERWISE AS PER CP

- VESSEL TO BE ITF OR EQUIVALENT APPROVED.

- OTHERWISE BASED ON CP REQUIREMENTS

OWNERS TO PRESENT FOLLOWING CERTIFICATES AND OWNERS CONFIRMATION THAT SAME ARE UP TO DATE/VALID FOR ENTERITY OF VOYAGE:
- SHIP SAFETY CONSTRUCTION CERTIFICATE:
- SHIP SAFETY EQUIPTMENT CERTIFICATE:
- SHIP SAFETY RADIO CERTIFICATE:
- INTERNATIONAL TONNAGE CERTIFICATE:
- INTERNATIONAL LOAD LINE CERTIFICATE:
- SMC CERTIFICATE:
- INTERNATIONAL OIL POLLUTION CERTIFICATE:
- DOC AND ISM CERTIFICATE:
- P & I CLUB CERTIFICATE:
- ISPS CERTIFICATE:
- VESSELS GEAR CERTIFICATE:
- OWNERS TO ADVSE FULL OWNERSHIP CHAIN OF PERFORMING VESSEL ON NOMINATION:

OWNERS CONFIRM VESSEL IS MIN 3 STAR RIGHT SHIP APPROVED -

- VSL/OWNERS/OPERATOR TO FULLY COMPLY WITH ISM CODE/CLAUSE
- VSL TO HAVE FLAT STEELFLOORED TANKS TOP
- VSL MUST NOT HAVE SUFFERED  ANY G.A. AND COLLISION LAST 12 MONTHS:
- VSL MUST NOT HAVE ANY RECOMMENDATIONS BY STATE CONTROL
- VSL TO BE ITF FITTED OR EQUIVALENT:
- VSL TO HAVE A CREW WHICH COMPLY WITH S.T.C.W.
- VSL TO COMPLY WITH LOADPORT/DISCHARGE PORT TERMINAL RULES
- VESSEL TO PROCEED FROM LOADING PORT TO DISCHARGE PORT AT MINIMUM 11 KNOTS, WEATHER PERMITTING
- MACGREGOR OR SIMILAR FOLDING TYPE HATCHCOVERS OR SIDE ROLLING HATCHCOVERS (NO TWEEN HATCHES/PONTOON HATCHCOVERS)
- OTHERWISE BASED ON CP REQUIREMENTS,

OWNERS CONFIRM VESSELS BALLASTING/DEBALLASTING SPEEDS ARE as attached

OWNERS CONFIRM PERFORMING VESSELS TO BE IN ACCORDANCE WITH THE REQUIREMENTS OF THE CP INCLUDING REFERENCE TO OWNERS RESP FOR VESSEL TO BE SUITABLE IN ALL RESPECTS FOR LOADING/DISCHARGE BERTHS/PORTS/FACILITIES

OWNERS WARRANT THAT THE VESSELS RECENT TRADING PATTERNS DO NOT CONTRAVENE ANY APPLICABLE TRADING EMBARGOES AT COUNTRIES OF LOADING/DISCHARGING OR WOULD OTHERWISE AFFECT THE EXECUTION OF THIS VOYAGE

FOR:
-a/c DURON LLC
3771 SW 17 TH LN
MIAMI , FL

-A FULL (SOLE) AND COMPLETE CARGO CONSISTING OF 30,000 MT 10 PCT MOLOO BLK WHEAT IN  BULK IN 1 GRADE  SF 44 CBFT/MT. IN ANY CASE, QUANTITIES ABOVE ALWAYS SUPPLIED BY CHRTS TO THE NEAREST 200 MT MOL IN CHOPT OF OWNERS DECL QTY PROVIDED SAME APPROVED BY USDA/NCB

-LAYCAN: 23-28 APRIL 2020
BUT ALWAYS TO HAVE 7 DAYS PRE ADVISE NOTICE

-LOADING:
1SB / 1 SA ALW AFLOAT GALVESTON, TX., WHERE VESSEL TO LOAD AND SAIL BASIS PREVAILING
DRAFTS

-DISCHARGE:
1 SB  ALWAYS AFLOAT MATARANI, PERU WHERE VSL TO ARRIVE WITH MAX 9.75 MTRS SW
ON IN CHOPT
1 SB  ALWAYS AFLOAT PTO CABELLO, VZLA WHERE VESSEL TO LOAD AND SAIL BASIS PREVAILING
DRAFTS

OWNERS RESPONSIBILITY FOR VESSEL TO GET UNDER AND STAY UNDER LOADING/ DISCHARGING
FACILITIES THROUGHOUT LOADING/DISCHARGING OPERATIONS AND TO
ARRIVE/BERTH/LOAD/DISCHARGE/SAIL BASIS PREVAILING DRAFT

OWNERS TO SATISFY THEMSELVES AS TO ANY/ALL LOAD/DISHARGE PORT FACILITIES/BERTHS
RESTRICTIONS INCLUDING BUT NOT LIMITED TO DRAFT/LOA/BEAM/AIR DRAFT/WLTHC - CTRS DO NOT
WARRANT SAME IN ANY WAY - THIS IS SOLELY OWNERS' CONCERN. UNDERSTOOD PORTS/BERTHS
RESTRICTION TO REMAIN OWNERS FULL RESPONSIBILITY.

ANY WARPING AT LOAD AND / OR DISCHARGE IF REQUIRED TO BE FOR CHARTERERS
 TIME/RISK/EXPENSE.

-LOAD:
7,000 MT PER WWD OF 24 CONSEC HRS SAT SHEX EIU
CHOPT FOR:
10,000 MT PER WWD OF 24 CONSEC HRS SAT SHEX EIU

-DISCHARGE RATE:
7,000 MT PER WWD OF 24 CONSEC HRS SHINC AT BOTH MATARANI AND PBL.
CHOPT FOR
5,000 MT MT PER WWD OF 24 CONSEC HRS SHINC AT PTO CABELLO

IF GRABBER VESSEL CHARTERERS HAVE THE OPTION TO FREE USE GRABS AS ON BOARD

NOR NOT TO BE TENDERED PRIOR TO FIRST LAYDAYS

THE NOTICE OF READINESS (SSHEX NOR), WILL BE PRESENTED AND ACCEPTED ONLY AFTER THE
VESSEL REGISTERED WITH US CUSTOMS, AND IS ACCEPTED BY THE INSPECTORS OF THE NATIONAL
CARGO BUREAU AND FGIS. INTERNATIONAL CERTIFICATION OF WEIGHT, WHARFAGE APPLICATION
SIGNED BY THE HARBOR MASTER, AND INITIAL INSPECTION BY THE LOADING ELEVATOR. SSHEX NOR
CAN BE TENDERED BETWEEN 0800 AND 1600 HOUR MONDAY TO FRIDAY, EXCLUDING SATURDAY AND
SUNDAYS AND HOLIDAYS, THE DATE AND TIME ITS FILED AND ACCEPTED WILL BE CONSIDERED THE
BASIS FOR CALCULATING LAY TIME. PRIOR TIME USED NOT  TO COUNT AS LAY TIME. OTHERWISE AS
PER NAEGA 2 (INC ADDENDUM #1 & 2) -

LAYTIME TO COMMENCE AT LOAD:
LAYTIME AT  LOAD PORT TO COMMENCE AT 08:00 HRS NEXT WORKING DAY AFTER VALID NOR
TENDERED AND ACCEPTED SATSHEX. WIPON, WIBON, WIFPON, WCCON. TIME NOT TO COUNT FROM
17:00 HRS ON FRIDAY OR 17:00 HRS ON  A DAY PRIOR TO HOLIDAY UNTIL 08:00 HRS MONDAY OR 08:00
HRS NEXT WORKING DAY, EIU.

NOR AT   DISCHARGE PORT:
THE NOTICE OF READINESS (SHINC NOR), WILL BE PRESENTED AND ACCEPTED ONLY AFTER THE
VESSEL REGISTERED WITH LOCAL CUSTOMS (IN CASE OF BERTH IS OCCUPIED, MASTER HAS THE
RIGHT TO TENDER WICCON). SHINC NOR CAN BE TENDERED BETWEEN 0800 AND 1700 HOUR MONDAY
TO SUNDAY, THE DATE AND TIME ITS FILED AND ACCEPTED WILL BE CONSIDERED THE BASIS FOR
CALCULATING LAY TIME. PRIOR TIME USED NOT  TO COUNT AS LAYTIME.

LAYTIME TO COMMENCE AT DISCH:
LAYTIME AT  LOAD PORT TO COMMENCE AT 08:00 HRS NEXT WORKING DAY AFTER VALID NOR
TENDERED AND ACCEPTED SHINC WIPON, WIBON, WIFPON, WCCON.

FREIGHT RATES:

|  | load rate | discharge rate | frt rate |
|---|---|---|---|
| **if vsl loads to max 9.75 mtrs swad for matarani (i.e. vsl loads 31700mt)** | 7,000 mt per wwd of 24 consec hrs sat shex eiu | 7,000 mt per wwd of 24 consec hrs shinc | $22.50 pmt (dischport matarani) |
| **if charterers declare pto cabello prior to vessel's loading (i.e. vsl loads 33000mt)** | 7,000 mt per wwd of 24 consec hrs sat shex eiu | 7,000 mt per wwd of 24 consec hrs shinc | $18.00 pmt (dischport pto cabello) |
| **if charterers declare pto cabello after vessel loaded to 9.75 sw  (i.e. vsl loads 31700mt)** | 7,000 mt per wwd of 24 consec hrs sat shex eiu | 7,000 mt per wwd of 24 consec hrs shinc | $18.50 pmt (dischport pto cabello) |

alternative load rate: chopt option for load rate to be 10,000 mt per wwd of 24 consec hrs sat shex eiu in which case frt rate to be reduced by $0.75/mt.

alternative disch rate for pto cabello: chopt option for disch rate to be 5,000 mt per wwd of 24 consec hrs shinc in which case frt rate to be increased by $1.00/mt.

all above frt rates are "FIOST SPOUT/GRAB TRIMMED BASIS 1/1"

OWNERS OPTION FOR FREE D/A'S IN PTO CABELLO IN WHICH CASE FRT TO BE REDUCED BY $90,000

-Payments (below dollar amounts to be adjusted depending on frt option declared by Charterers):

Charterers shall pay frt 100 pct within 3 banking days of signing bills of lading marked "freight payable as per cp". Freight deemed earned as cargo loaded on board vessel, discountless and non returnable ship and/or cargo lost or not lost.

On vessel's sailing load port, Owners shall provice a freight statement basis "Cargo quantity * $18.50/mt". Bills of lading will be drafted basis discharge port Matarani.

Charterers to confirm as earliest as possible or latest 2 business days prior to arrival to Panama if vessel shall cross the canal.
Any time lost due to delay in Charterer's orders that may affect vessel's que for crossing the panama canal to be assessed at the detention rate applicable for the cargo's final destination.

If on Charterers orders vessel is to standby at Panama prior to crossing, then detention is to assessed for all time lost, uninterrupted, from the moment the vessel stops until she is underway again. Calculation to be made based on local time. Charterers to pay detention on presentation of Owners invoice which shall be sent to Charterers every 5 days. The detention rate to apply depends on vsl's final destination as above.

If vessel is ordered to proceed to Matarani, then Owners will send a new statement of account basis "Cargo quantity * $22.50/mt". Charterers shall pay the updated statement of account within 48 hours of presentation.

If at any point after vessel's sailing load port Charterers request vessel to change direction towards Puerto Cabello, then the cost of deviation to be calculated on 'Open Book' basis and shall be paid by Charterers on presentation of Owners invoice.

For calculation purposes the point of deviation (long/lat) is the moment when Master confirms vessel has changed direction towards Venezuela.

In case the vessel incurs in more than 5 days of demurrage in Vzla, the Owners shall be entitled to send their demurrage invoice which is due and shall be paid by Charterers on its presentation.

Owners privilege to not release any cargo until funds due to them are received in Owner's bank account with any time lost to count and any extra expenses (such as vsl bn kicked out of berth) to be for Charterers account.

- Owners bank details:

Beneficiary bank: Berenberg
Neuer Jungfernstieg, 20
20354 Hamburg, Germany
IBAN DE48 2012 0000 0527 9140 06
Swift : BEGODEHH

a/c number: 0527914006 USD value
Beneficiary : KONDOT S.A.

Correspondent bank:
JP Morgan Chase Bank - New York, N.Y. U.S.A.
Swift code: CHASUS33

WARNING: In view of recent increase in fraudulent online activity, in the event you receive any payment instructions different from the above, please urgently call TST to confirm correct bank details.

-Demurrage/Detention:

| Final Discharge Port | Demurrage | Detention at Panama |
|---|---|---|
| Pto Cabello | $13750 | $11600 |
| Matarani | $12250 | $10200 |

-DEMM IS HD WTS BENDS

-LAYTIME NON REVERSIBLE BETWEEN  LOAD AND DISCHARGE PORTS

-CHRTRS AGTS BENDS

At  Galveston:
Blue Water Shipping Company
2100 Space Park Drive, Ste 102
Houston, Texas 77058
 24 Hour Office Phone: 281-280-9943
 FAX: 281-280-9957 Telex: 48155793 Cable: BLUWTR HOUSTON
 houston@bluewatershipping.com

At Pto Cabello:
NAVES DE VENEZUELA, C.A.
Centro Comercial y Profesional Puerto Azul,
Piso 01, Ofic. 1-08, Calle Municipio,  Puerto Cabello - Edo. Carabobo
Phone: ++58 (242) 361 8583 / 361 1385
Fax: ++58 (242) 362 3789 / Postal Code: 2050
E-MAIL : ptocabello@navesdevenezuela.net

At Matarani:
Maritima Mercantil
Renzo Alvarado
Marítima Mercantil SAC
Tel: +511 429 3106
Cel: +51 993 048 087
www.mmercantil.com.pe
ralvarado@mmercantil.com.pe

-OWNERS TO APPOINT CHRTS NOMINATED AGENTS FOR ALL PORTS, OWNERS PAYING CUSTOMARY FEES , BENDS

-IT IS USTOOD OWNERS ARE RESPONSIBLE TO PAY FOR USUAL/ CUSTOMARY PORT CHARGES/EXPENSES/VSL'S DISBURSEMENTS, AS WELL AS SHIP'S HUSBANDING MATTERS.

-ANY TAXES/DUES ON CARGO/FREIGHT TO BE FOR SHPRS/RCVRS/CTRS' ACCT

-ANY TAXES/DUES /DOCKAGE ON VSL TO BE FOR OWNS'ACCT.

-EXTRA INSURANCE ON CARGO DUE TO VESSELS AGE/FLAG/CLASS OR OWNERSHIP IS APPLICABLE TO BE OWNERS ACCOUNT

-BIMCO ANTI DRUG ABUSE CLAUSE TO BE INCORPORATED IN THE CP

IN PURSUANCE OF THE PROVISIONS OF THE U.S. ANTI-DRUG ABUSE ACT 1986, OR ANY RE-ENACTMENT THEREOF, THE CHARTERERS WARRANT TO EXERCISE THE HIGHEST DEGREE OF CARE AND DILIGENCE IN PREVENTING UNMANIFESTED NARCOTIC DRUGS AND MARIJUANA TO BE LOADED OR CONCEALED ON BOARD THE VESSEL.

NON-COMPLIANCE WITH THE PROVISIONS OF THIS CLAUSE SHALL AMOUNT TO BREACH OF WARRANTY FOR THE CONSEQUENCES OF WHICH THE CHARTERERS SHALL BE LIABLE AND SHALL HOLD THE OWNERS, THE MASTER AND THE CREW OF THE VESSEL HARMLESS AND SHALL KEEP THEM INDEMNIFIED AGAINST ALL CLAIMS WHATSOEVER WHICH MAY ARISE AND BE MADE AGAINST THEM INDIVIDUALLY OR JOINTLY.
FURTHERMORE, ALL TIME LOST AND ALL EXPENSES INCURRED, INCLUDING FINES, AS A RESULT OF THE CHARTERERS' BREACH OF THE PROVISIONS OF THIS CLAUSE SHALL BE FOR THE CHARTERERS' ACCOUNT AND THE VESSEL SHALL REMAIN ON HIRE.
SHOULD THE VESSEL BE ARRESTED AS A RESULT OF THE CHARTERERS' NON-COMPLIANCE WITH THE PROVISIONS OF THIS CLAUSE, THE CHARTERERS SHALL AT THEIR EXPENSE TAKE ALL REASONABLE STEPS TO SECURE THAT WITHIN A REASONABLE TIME THE VESSEL IS RELEASED AND AT THEIR EXPENSE PUT UP BAIL TO SECURE RELEASE OF THE VESSEL.
THE OWNERS SHALL REMAIN RESPONSIBLE FOR ALL TIME LOST AND ALL EXPENSES INCURRED, INCLUDING FINES, IN THE EVENT THAT UNMANIFESTED NARCOTIC DRUGS AND MARIJUANA ARE FOUND IN THE POSSESSION OR EFFECTS OF THE VESSEL'S PERSONNEL.

-If Charterers request vessel to discharge at Pto Cabello after bills of lading with destination Matarani are released, then the following procedure is to be followed

1) The intended changes will be part/all of the following: consignee, notify party, destination, cargo split (the total quantity of the
cargo covered by the new bills of lading is to be equal to the original bills of lading). New set of bills of lading to be always in
line with the mate's receipts, but only as far as quantity and description of the cargo is concerned. Mates' receipts not to be
cancelled and reissued according to the new set of bills of lading.

2) Charterers and Owners mutually agree on Owner's representative/agent, details below, to undertake the "switching of bills of lading" at Owners agent office his office.

Owners represenive/agent is: (REVERTING with Miami representative/agent)

a. Charterers to sign Owners LOI for switching bills of lading (signed only by them and without bank guarantee).

b. Charterers will present by email to Owners the draft Bills of Lading of the second set to obtain their approval.

c. Once the new sets of bills of lading are approved by Owner, Owner's representative/agent will issue second set of bills of lading at
his office. Owners will provide a "letter of authorization" to the agent/representative allowing them to sign the second set of
bills of lading.

d. A person representing Charterer will travel to Owner's representative agent office where he will deliver the first set of bills of lading and, simultaneously, take possession of the second new set of bills of lading. Name of Charterer's
representative: (pls insert)

e. At no time will Owners representative/agent release a new set of bill of lading to Charterer until the old set is returned.

f. All reasonable costs associated to the reissuance of second set of bills of lading, including but not limited to reasonable fees and travel expenses, to be for Charterer's account.

- IN THE EVENT THE ORIGINAL BILLS OF LADING ARE NOT AVAILABLE ON VESSELS ARRIVAL AT DISCHARGE PORT, OWNRS TO RELEASE THE ENTIRE CARGO AND ALLOW DISCHARGING AGAINST PRESENTATION OF LETTER OF INDEMNITY (L.O.I) ISSUED BY CHARTS, ON CHARTS LETTERHEAD, IN OWNRS P ANDI CLUB WORDING, TO BE SIGNED BY CHARTRS ONLY (WITH NO BANK GUARANTEE).

-VSL ON ARRIVAL LOADPORT TO PRESENT ALL HOLDS CLEAR FROM PREVIOUS CGOES, FRESH WATER WASHED, DRY AND IN EVERY RESPECT CLEAN AND READY TO LOAD GRAIN CARGO IN BULK TO THE SATISFACTION OF AN INDEPENDANT SURVEYOR. ANY COSTS AND TIME INVOLVED IN CLEANING VESSEL TO SURVEYOR'S SATISFACTION TO BE FOR OWNERS' ACCOUNT. IN THE EVENT THAT VESSEL IS REQUIRED TO SHIFT FROM BERTH AS A CONSEQUENCE OF NOT BEING CLEAN, COSTS AND TIME OF SUCH SHIFTING AND RETURNING TO BERTH TO BE FOR OWNERS' ACCOUNT, TIME FROM VESSEL'S HOLDS BEING FAILED UNTIL PASSED NOT TO COUNT AS LAYTIME OR TIME ON DEMURRAGE

-LATEST BIMCO ISPS/MTSA CLAUSE FOR VOYAGE CHARTERS 2005  TO APPLY

BIMCO ISM CLAUSE TO APPLY

- O.F.A.C CLAUSE

B. O.F.A.C CLAUSES - PERFORMING VESSEL(S) AND CHARTERERS ALWAYS TO BE IN CONFORMITY WITH APPLICABLE UNITED STATES LAW AND UNITED NATIONS PROCLAMATIONS PROHIBITING CERTAIN FLAGS/OWNERSHIP/MANAGEMENT FROM PARTICIPATING IN TRADE COVERED BY THIS CHARTER, INCLUDING RESTRICTIONS IMPOSED BY THE US TREASURY DEPARTMENT, OFFICE OF FOREIGN ASSETS CONTROL (OFAC) AND THE US COMMERCE DEPARTMENT, BUREAU OF INDUSTRY AND SECURITY (BIS) ) AND UNITED NATIONS PROCLAMATIONS PROHIBITING CERTAIN FLAG/OWNERSHIP/MANAGEMENT FROM PARTICIPATING IN TRADE COVERED BY THIS CHARTER. OWNERS RESPONSIBLE FOR ALL COST/CONSEQUENCES IF IN VIOLATION OF THIS WARRANTY

C. OWNERS GUARANTEE THE VESSEL IS FREE FROM ANY OBLIGATION, ENCUMBRANCE, CLAIM OR LIEN, OF A FINANCIAL NATURE OR OTHERWISE, THAT WOULD INTERFERE IN ANY WAY WITH THE VESSEL'S PERFORMANCE OF THIS VOYAGE AND/OR THE DELIVERY OF THE CARGO WITH THE UTMOST DESPATCH. IN THE EVENT THE VESSEL/ CARGO IS LIENED OR ARRESTED DURING THE CURRENCY OF THIS CHARTER PARTY (OR AFTER COMPLETION OF DISCHARGE IN RESPECT OF THE CARGO) THE OWNERS ARE TO TAKE IMMEDIATE ACTION TO RELEASE VESSEL/CARGO FROM ANY SUCH LIEN OR ARREST AND TO REMAIN FULLY RESPONSIBLE FOR THE COST OR DAMAGES CAUSED AS A RESULT OF ANY LIEN OR ARREST OR INTERRUPTION OF THE VESSEL'S PERFORMANCE UNDER THIS CHARTER PARTY.

*shippers: adm

*venezuela receivers:
mocasa molinos carabobo c.a., ave baralt, esquina quinta cresco. urbanizacion quinta crespo. distrito capital, caracas, venezuela
industrias integradas de alimentos, inalsa. cra 3 con calle 4. barquisimeto, estado lara, venezuela.
iancarina c.a. parque industrial los llanos. k 185. araure, venezuela
alimentos polar
owners confirm above parties acceptable.

-IF FREIGHT BENEFICIARY IS DIFFERENT THAN THE OWNERS/DISPONENT OWNERS OF THE VSL, THEN "WRITTEN DECLARATION/NO OBJECTION LETTER" FROM HEAD OWNERS/DISPONENT OWNERS TO BE ASKED FOR CHARTERERS PAYING THE FREIGHT TO THE NOMINATED "FREIGHT BENEFICIARY" IN ACCORDANCE WITH OFAC CLAUSE WHICH IS AS INCORPORATED IN THE CHARTER PARTY).

-OWNERS GUARANTEE THE VESSEL IS FREE FROM ANY OBLIGATION, ENCUMBRANCE, CLAIM OR LIEN, OF A FINANCIAL NATURE OR OTHERWISE, THAT WOULD INTERFERE IN ANY WAY WITH THE VESSEL'S PERFORMANCE OF THIS VOYAGE AND/OR THE DELIVERY OF THE CARGO WITH THE UTMOST DESPATCH. IN THE EVENT THE VESSEL/ CARGO IS LIENED OR ARRESTED DURING THE CURRENCY OF THIS CHARTER PARTY (OR AFTER COMPLETION OF DISCHARGE IN RESPECT OF THE CARGO) THE OWNERS ARE TO TAKE IMMEDIATE ACTION TO RELEASE VESSEL/CARGO FROM ANY SUCH LIEN OR ARREST AND TO REMAIN FULLY RESPONSIBLE FOR THE COST OR DAMAGES CAUSED AS A RESULT OF ANY LIEN OR ARREST OR INTERRUPTION OF VESSEL'S PERFORMANCE UNDER THIS CHARTER PARTY.

-BALLAST WATER MANAGEMENT CLAUSE
OWNERS WARRANT THAT THE VESSEL SHALL COMPLY WITH ALL MANDATORY BALLAST WATER REQUIREMENTS. THE OWNERS SHALL ASSUME LIABILITY FOR AND SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS THE CHARTERERS AGAINST ANY LOSS AND/OR DAMAGE (EXCLUDING CONSEQUENTIAL LOSS AND/OR DAMAGE) AND ANY EXPENSES, FINES, PENALTIES AND ANY OTHER CLAIMS, INCLUDING BUT LIMITED TO LEGAL COSTS, ARISING FROM THE OWNERS' FAILURE TO COMPLY WITH ANY SUCH PROVISIONS. SHOULD SUCH FAILURE RESULT IN ANY DELAY THEN, NOTWITHSTANDING ANY PROVISION IN THIS CHARTER PARTY TO THE CONTRARY, THE PERIOD OF SUCH DELAY SHALL NOT COUNT.

-BUNKER FUEL SULPHUR CONTENT CLAUSE
OWNERS CONFIRM THEY ARE AWARE OF THE MAXIMUM SULPHUR CONTENT REQUIREMENTS OF ANY EMISSION CONTROL ZONE THE VESSEL MAY BE REQUIRED TO ENTER DURING THE PERFORMANCE OF THIS CHARTER. OWNERS WARRANT THAT OWNERS AND THE VESSEL SHALL COMPLY WITH ALL APPLICABLE REQUIREMENTS OF ANY EMISSION CONTROL ZONE AND SHALL USE FUELS (WHICH TERM SHALL INCLUDE ALL HEAVY FUEL OILS, MARINE GAS OILS AND MARINE DIESEL OILS AS APPLICABLE) OF SUCH SPECIFICATIONS AND GRADES TO ENSURE COMPLIANCE WITH THESE REQUIREMENTS. FOR THE PURPOSE OF THIS CLAUSE, "EMISSION CONTROL ZONE" SHALL MEAN AREAS AS STIPULATED IN MARPOL ANNEX VI AND/OR ZONES AND/OR AREAS REGULATED BY REGIONAL AND/OR NATIONAL

AUTHORITIES SUCH AS, BUT NOT LIMITED TO, THE EU, THE US ENVIRONMENTAL PROTECTION AGENCY AND THE CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY.  OWNERS SHALL INDEMNIFY, DEFEND AND HOLD CHARTERERS HARMLESS IN RESPECT OF ANY DIRECT LOSS, LIABILITY, DELAY, FINES, COSTS OR EXPENSES ARISING OR RESULTING FROM OWNERS' FAILURE TO COMPLY WITH THIS CLAUSE.

-5 PCT MIDSHIP

-OTHERWISE AS PER CHRTRS PROFORMA DTD 2-9-17 (ATTACHED) WITH AMENDMENTS AS PER MAIN TERMS, LOGICAL ALTERATIONS AND THE FOLL EXCEPTIONS:

-l20: delete 10, 8, 7. Insert "daily"

-l167: after "charges", insert "to end of shift"

-l227: add at the end "the rights afforded to Owners under COGSA shall always prevail in this c/p"

-cl47: where it refers to crane breakdown, add "Unless caused by the negligence of stevedores"

-cl54, para 3: add at the end "in case of loading IMO cgoes"
Para 6: add at the beg "subject to head owners appvl"

-cl57, para 2: delete "and estimated dispatch from initial frt payment"

-cl60:
Para 1: amend to show that if vsl has to shift to another berth for fumigation, such shifting expenses are for chrtrs acct.

-cl61, para 2:  delete "excluding Super Holidays, as per BIMCO holidays. Otherwise as per Charter Party."
Para 6: to read "In case of rain, laytime during opening and closing of hatches not to count"
Para 7: After "Laytime non-reversible", delete "Superholidays excepted"

-cl72: delete 2nd para

Additional clauses:

-U.S. Customs Advance Notification/AMS Clause for Voyage Charter Parties

(a) If the Vessel loads or carries cargo destined for the US or passing through US ports in transit, the Owners shall comply with the current US Customs regulations (19 CFR 4.7) or any subsequent amendments thereto and shall undertake the role of carrier for the purposes of such regulations and shall, in their own name, time and expense:

    i)       Have in place a SCAC (Standard Carrier Alpha Code);
    ii)      Have in place an ICB (International Carrier Bond); and
    iii)    Submit a cargo declaration by AMS (Automated Manifest System) to the US Customs.

(b) The Charterers shall provide all necessary information to the Owners and/or their agents to enable the Owners to submit a timely and accurate cargo declaration. The Charterers shall assume liability for and shall indemnify, defend and hold harmless the Owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and/or any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with any of the provisions of this sub-clause. Should such failure result in any delay then, notwithstanding any provision in this Charter Party to the contrary, all time used or lost shall count as laytime or, if the Vessel is already on demurrage, time on demurrage.

(c) The Owners shall assume liability for and shall indemnify, defend and hold harmless the Charterers against any loss and/or damage whatsoever (including consequential loss and/or damage) and any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Owners' failure to comply with any of the provisions of sub-clause (a). Should such failure result in any delay then, notwithstanding any provision in this Charter Party to the contrary, all time used or lost shall not count as laytime or, if the Vessel is already on demurrage, time on demurrage.

(d) The assumption of the role of carrier by the Owners pursuant to this Clause and for the purpose of the US Customs Regulations (19 CFR 4.7) shall be without prejudice to the identity of carrier under any bill of lading, other contract, law or regulation.

++++

-congenbills of lading to be used

-all monies due under this c/p to be settled between owners and chrtrs
**End**

PLS CONFIRM THE ABOVE IS IN ORDER PER YR NOTES

Rgds,

---

38. GA.pdf (1317 kb)  -  Hanze Gendt.doc (146 kb)  -  Pre Stowage Plan 1 Galveston.pdf (306 kb)  -  STOWAGE PLAN Galveston Matarani.pdf (325 kb)  -  13. Cargo Ship Safety Cert (CSSC).pdf (827 kb)  -  13 a. Cargo Ship Safety Certificate - Part 2.pdf (1378 kb)  -  02. International Tonnage Certificate (Cover Page).pdf (452 kb)  -  12. International Load Line Certificate.pdf (335 kb)  -  11. International Safety Management Certificate.pdf (554 kb)  -  32. COFR.pdf (206 kb)  -  10. International Ship Security Certificate.pdf (781 kb)  -  25. Cargo Gear Certificate.pdf (82 kb)  -  Huron Proforma dated 2-9-17.pdf (621 kb)  -

Code Name: **Norgrain 89**
RECOMMENDED BY THE BALTIC AND INTERNATIONAL MARITIME COUNCIL (BIMCO)
THE FEDERATION OF NATIONAL ASSOCIATIONS OF SHIP BROKERS AND
AGENTS (FONASBA) AMENDED MAY 1989

**NORTH AMERICAN GRAIN CHARTERPARTY 1973**
ISSUED BY THE ASSOCIATION OF SHIP BROKERS AND AGENTS (U.S.A.) INC.

**Miami, FL – February 9, 2017**

1 **Owners** IT IS THIS DAY MUTUALLY AGREED, between

2 *Note:Delete as* {Owners/~~Disponent Owners/Time chartered Owners/Chartered Owners~~} of the tonnage to be nominated (SS/M.V. "TBN "(~~Self/Non Self Trimming Bulk~~ **Single Deck Bulk** Carrier/~~Tween Decker/Tanker~~)

| | |
|---|---|
| 3Description of Vessel | Call Sign ....................................................................................... |
| | Built **As per rider Clause 47** …......at ........................................................................... of ............. ............. ............. ............ ~~metric~~ .............. tons of 2,240 lbs. |
| 4 | ~~deadweight all told, or thereabouts, and with a grain cubic capacity available for cargo of~~ ................................... ~~cubic feet (including~~ ...................................... ~~cubic feet in~~ |
| 5 | ~~self bleeding wing spaces)~~ |
| 6 | ..................................................................................................................................................... |
| 7 Classification | ~~Classed~~ ................................... ~~in~~ …………………………………………....~~now~~ ........................................................................... |
| 8 | .............................................................................................................................................................. |
| 9 | .............................................................................................................................................................. |
| 10. | ........................................................................................................................................ |
| 11 **Charterers** | |
| 12 Loading | 1. That the said vessel, being tight, staunch strong and in every way fit for the voyage, shall with all ~~convenient speed~~ **(See Clause 47)** proceed to **(See Clause 48)** |
| | ..................................................................................................................... |
| 13 **Port(s)** | ....................................................................................... and there load |
| 14 | at .............................................................................................. ~~safe loading berth(s)~~ in Charterers' option. |
| 15Description of Cargo | ~~always afloat,~~ a full (sole) and complete*/~~or part*~~ cargo in bulk of **(See Clause 49)** |
| 16 | .............................................................................................................................................................. |
| 17 | .............................................................................................................................................................. |
| 18 | ~~at Charterers' option~~…………………………… ~~tons of 2,240 lbs.*~~ / 1,000 kilos.* …………………………………………… % more or less, quantity at Owners' option. |
| 19 **Notice and** | 2. Owners are to give Charterers ~~(or their Agents) (telegraphic address "~~...............................................................~~." telex number:~~ ...............................................................) |
| 20 **Loading Port** | ~~21/15~~ 10 and 8/7/5/3/**2**/**1** days notice of vessel's expected readiness to load date, and approximate quantity of cargo required ~~with the 15 days' notice, such quantity to be based on a cargo of Heavy Grain,~~ |
| | ~~unless the~~ and 3 days notice of the vessel's definite readiness to load date |
| 21 **Orders** | ~~cargo composition has been declared or indicated.~~ **(See rider Clause 53)** |
| 22 | The Charterers are to be kept continuously advised by **Email** ~~telegram/telex~~ of any alteration in vessel's readiness to load date. **Estimated time of arrival to be defined by Shipowners on the Charter Party.** |
| 23 | ~~Master to apply to~~ ............................................................... ~~(telegraphic address "~~ ...............................................................") |
| 24 | ~~for first or sole loading port orders 1 44 hours before vessel's expected readiness to load date but not sooner than 1 44 hours before the laydays in Clause 4 and Charterers or their Agents are to give~~ |
| 25 | ~~orders for first or sole loading port within 72 hours of receipt of Master's application, unless given earlier.~~ |
| 26 | ~~Orders for second port of loading, if used, to be given to the Master not later than~~ ............................................................... |
| 27 | ..................................................................................................................................................... |

| 28 | .Master is to give Charterers (or their Agents) 72 and 24 hours notice of vessel's estimated time of arrival at first or sole loading port together with vessel's estimated readiness to load date. |
|---|---|
| 29 **Vessel** | 3. Vessel is to load under inspection of National Cargo Bureau, Inc in U.S.A. ports or of the Port Warden in Canadian ports. Vessel is also to load under inspection of a Grain Inspector licensed/authorized |
| 30 **Inspection** | by the United States Department of Agriculture pursuant to the U.S. Grain Standards Act and/or of a Grain Inspector employed by the Canada Department of Agriculture as required by the |
| 31 | appropriate authorities. **(See Rider Clause 54)** |
| 32 | If vessel loads at other than U.S. or Canadian ports, she is to load under inspection of such national and/or regulatory bodies as may be required. |
| 33 | Vessel is to comply with the rules of such authorities, and shall load cargo not exceeding what she can reasonably stow and carry over and above her Cabin, Tackle, Apparel, Provisions, Fuel, Furniture |
| 34 | and Water. Cost of such inspections shall be borne by ~~Owners~~ **charterers. Local rules to apply.** |
| 35 **Laydays/** | 4.Laytime for loading, if required by Charterers, not to commence before 0800 on the **(See rider Clause 55)** ...............day of…………………………………………………...............19 |
| **Cancelling** | ........................................ |
| 36 | Should the vessel's notice of readiness not be tendered and accepted as per Clause 18 before 1200 on the .............................day of ……………………………… 19 ...................................... |
| 37 | the Charterers have the option of cancelling this Charterparty any time thereafter, but not later than one hour after the tender of notice of readiness as per Clause 18. **(See Clause 52)** |
| 38 **Destination** | 5. On being so loaded, the vessel shall proceed to **(See Clause 48)** |
| 39 | ……………………………………………………………...............… |
| 40 | as ordered by Charterers/~~Receivers~~*, and deliver the cargo, according to Bills of Lading at **(See Clause 48)**………………………………………………………...............… |
| 41 | safe discharging berths ~~in Charterers' option~~, vessel being always afloat, on being */having been * paid freight as per Clauses 8 and 9. |
| 42 Discharging | Master to apply by radio to ………………………………………… (telegraphic address " .................................................................... ") |
| 43 **Port** | for first or sole discharging port orders 96 hours before vessel is due off/at * ........................... and they are to give first or sole loading port orders by radio within 48 hours of |
| 44 **Orders** | receipt of Master's application unless given earlier. If Master's application is received on a Saturday, the time allowed shall be 52 hours instead of 48 hours. |
| 45 | Orders for second and/or third port(s) of discharge are to be given to the Master not later than vessel's arrival at first or subsequent port. |
| 46 | Master to radio Charterers/Receivers (or their Agents) 72 and 24 hours notice of vessel's estimated time of arrival at first or sole discharging port. Charterers/Receivers (or their Agents) are to be kept |
| 47 | continuously advised by radio/telegram/telex of any alterations in such estimated time of arrival. |
| 48 **Bills of** | 6. The Master is to sign Bills of Lading as presented **in accordance with Mates Receipts** ~~on the North American Grain Bill of Lading~~ form without prejudice to the terms, conditions and |
| 49 **Lading** | exceptions of this Charterparty. If the Master elects |
| 50 **Rotation** | to delegate the signing of Bills of Lading to his Agents he shall given them authority to do so in writing, copy of which is to be furnished to Charterers if so required. |
| **of** | 7. Rotation of loading ports is to be in Owners'*/ ~~Charterers'~~* option**.** |
| **Ports** | |
| 51 | Rotation of discharging ports is to be in Owners'*/Charterers'* option, but if more than two(2) ports of discharge are used rotaion is to be geographic ...............................to................................ |
| 52 **Freight** | 8. Freight to be paid as follows: |
| 53 | **(See Clause 56)** |
| 54 | ...................................................................................................................................................................................................................................................................... |
| 55 | ...................................................................................................................................................................................................................................................................... |
| 56 | ....................................................................................................................................................................................... |
| 57 | per **metric** ton ~~of 2,240 lbs./1,000 Kilos*~~ |
| 58 | Charterers have the option of ordering the vessel to load at ........................................................................................................................................................................................ |
| 59 | ...................................................................................................................................................................................................................................................................... |
| 60 | in which case the rate of freight to be ............................................................................................................................................................................................................... |
| 61 | ...................................................................................................................................................................................................................................................................... |
| 62 | ...................................................................................................................................................................................................................................................................... |
| 63 | per ton of 2,240 lbs./1,000 Kilos.* |
| 64 | Charterers/Receivers have the option of ordering the vessel to discharge at ............................................................................................................................................................... |
| 65 | ...................................................................................................................................................................................................................................................................... |
| 66 | in which case the rate of freight to be ........................................................................................................................ |
| 67 | ...................................................................................................................................................................................................................................................................... |
| 68 | ...................................................................................................................................................................................................................................................................... |
| 69 | per ton of 2,240 lbs./1,000 Kilos* |
| 70 | If more than one port of loading and/or discharging is used, the rate of freight shall be increased by ........................................................................................................................... |
| 71 | ...................................................................................................................................................................................................................................................................... |
| 72 | .........................................................................per ton of 2,240 lbs./1,000 Kilos* for each additional loading and/or discharging port on the entire cargo. |
| 73 **Freight** | 9. *(a)* Freight shall be fully prepaid on surrender of signed Bills of Lading in See Clause 57 ~~in~~ **United States**........................................................................................................currency to |
| **Payment** | |

| 74 | |
| 75 | |

76 | on Bill of Lading weight, discountl ess, not returnable, vessel or cargo lost or not lost. Freight shall be deemed earned as cargo is loaded on board.

77 | Once the Bills of Lading have been signed, and Charterers call for surrender of Original Bills of Lading against freight payment above, it will be incumbent upon Owners or their Agents to comply

78 | immediately with such call for surrender during office hours, Mondays to Fridays inclusive.

**79 (Other)** | *(b)* ................................................................................................................................................................

| 80 | ................................................................................................................................................................ |
| 81 | ................................................................................................................................................................ |

**82 Cost of** | 10. *(a)*\* Cargo is to be loaded and spout trimmed (to Master's satisfaction in respect of seaworthiness) free of expense to the vessel.
**83 Loading** | Cargo is to be discharged free of expense to the vessel (to Master's satisfaction in respect of seaworthiness).  **See also Clause 47**
**and**
**Discharging**

84 | *(b)\* Cargo is to be loaded and trimmed at Owners' expense.*

85 | Cargo is to be discharged free of expense to the vessel (to Master's satisfaction in respect of seaworthiness).

86 | 11. Stevedores at loading Port(s) are to be appointed by <u>Charterers</u>\* and paid by <u>Charterers</u>\*
**Stevedores at**
**Loading** |                                     Owners\*                    Owners\*
**Port(s) and**

87 | If stevedores are appointed by Owners, they are to be approved by Charterers at loading port(s), and such approval is not to be unreasonably withheld.
**Discharging**

88 **Port(s)** | Stevedores at discharging port(s) are to be appointed and paid for by Charterers/Owners\*.

89 | In all cases, stevedores shall be deemed to be the servants of the Owners and shall work under the supervision of the Master.

**90 Bulk** | 12. *(a)* The vessel is warranted to be a **Single Deck**  self-trimming bulk carrier.\*
**Carrier**
**and Wing** |                           non self trimming bulk carrier.\* **(See Rider Clause 47)**
**Spaces**

91 | *(b)* Cargo may be loaded into wing spaces if the cargo can bleed into centerholds. Wing spaces are to be spout trimmed; any further trimming in wing spaces and any additional expenses in
92 | discharging are to be for Owners' account, and additional time so used is not to count as laytime or time on demurrage.

**93 Overtime** | 13. *(a)* **Expenses See Rider Clause 58**
94 |           (i) All overtime expenses at loading and discharging ports shall be for account of the party ordering same.  **If the Owners order overtime at loading port, the spread between the straight time**
**and overtime only should be for Owners' account.**
95 |           (ii) If overtime is ordered by port authorities or the party controlling the loading and/or discharging terminal or facility all overtime expenses are to be **for Charterers account** equally
shared between the
96 |           Owners and Charterers \*/ Receivers\*  Except if such overtime is due to Owner's negligence or fault.
97 |           (iii) Overtime expenses for vessel's officers and crew shall always be for Owner's account.
98 |      *(b)* **Time Counting**
99 | If overtime ordered by Owners be worked during periods excepted from laytime the actual time used shall count; if ordered by Charterers/Receivers, the actual time used shall not count; if ordered by
100 | port authorities or the party controlling the loading and/or discharging terminal or facility half the actual time used shall count.

101 | 14. Cost of cargo separations, including labor used for laying same, to be for Charterers' account unless required by Owners, in which case all resultant expenses shall be borne by the Owners. Separations
**Separations**

102 | ordered by Charterers shall be made to Master's satisfaction (but not exceeding the requirements of the competent authorities). **See also Clause 59**

**103 Securing** | 15. *(a)* **For Owners' accoun**t
104 | Any securing**,** required by Master, National Cargo Bureau or Port Warden for safe trim/stowage to be supplied by and paid for by Owners, and time so used not to count as lay time or time on demurrage.
105 | Bleeding of bags, if any, at discharge port(s) to be at Owners' expense, and time actually lost is not to count.

106 |      *b)* **For Charterers' accoun**t
107 | Any securing required by Master, National Cargo Bureau or Port Warden for safe trim/stowage to be supplied by and paid for by Charterers, and time so used to count as laytime or time on demurrage
108 | Bleeding of bags, if any, at discharge port(s) to be at Charterers'/Receivers' expense.

**109 Fumigati** | 16. **See Clause 60** If after loading has commenced, and at any time thereafter until completion of discharge, the cargo is required to be fumigated in vessel's holds, the Owners are to permit same to take
**on** | place at
110 | Charterers' risk and expense, including necessary expenses for accommodating and victualling vessel's personnel ashore.
111 | The Charterers warrant that the fumigants used will not expose the vessel's personnel to any health hazards whatsoever, and will comply with current IMO regulations.

112 | Time lost to the vessel is to count at the demurrage rate.

| 113 | **Opening/** | 17. **See Clause 61** At each loading and/or discharging port, opening and closing of hatches and removal and |
| 114 | **Closing** | d replacing of be1ms , if any, shall be for Owners' account. Cost of all other |
|  | **Hatches** | opening and closing of hatches, removal and replacing of beams shall be for Charterers'/Receivers' account. |
| 115 |  | 18. *(a)* **Notice of Readiness See Clauses 55** |
| 116 |  | Notification of vessel's readiness to load and discharge at the first or sole loading and discharging port shall be delivered in writing at the office of Charterers/Receivers between 0900 and 1700 on all |
| 117 |  | days except Sundays and holidays, and between 0900 and 1200 on Saturdays. Such notice shall be delivered when the vessel is in the loading or discharging berth if vacant, failing which |
| 118 |  | from a lay berth or anchorage within limits of the port, or otherwise as provided in Clause 18*(b)* hereunder |
| 119 | **Time** | *(b)* **Waiting for Berth Outside Port Limits See Clause 55** |
| 120 | **Counting** | If the vessel is prevented from entering the limits of the loading/discharging port(s) because the first or sole loading/discharging berth or a lay berth or anchorage is not available within the port limits, |
| 121 |  | or on the order of the Charterers/Receivers or any competent official body or authority, and the Master warrants that the vessel is physically ready in all respects to load or discharge, the Master may |
| 122 |  | tender vessel's notice of readiness, by radio if desired, from the usual anchorage outside the limits of the port, whether in free pratique or not, whether customs cleared or not. If after entering the limits |
| 123 |  | of the loading port, vessel fails to pass inspections as per Clause 18*(e)* any time so lost shall not count as laytime or time on demurrage from the time vessel fails inspections until she is passed,but if |
| 124 |  | this delay in obtaining said passes exceeds 24 running hours shex all time spent waiting outside the limits of the port shall not count. |
| 125 |  | *(c)* **Commencement of Laytime See Clauses 55** |
| 126 |  | Following receipt of notice of readiness laytime will commence at 0800 on the next day not excepted from laytime. Time (not excepted from laytime) actually used before commencement of laytime |
| 127 |  | shall count |
| 128 |  | *(d)* **Subsequent Ports** |
| 129 |  | At second or subsequent port(s) of loading and/or discharging, laytime or time on demurrage shall resume counting from vessel's arrival within the limits of the port or as provided in Clause 18*(b)* if |
| 130 |  | applicable. |
| 131 |  | *(e)* **Inspection See Clause 54** |
| 132 |  | Unless the conditions of Clause 18*(b)* apply, at first or sole loading port Master's notice of readiness shall be accompanied by pass of the National Cargo Bureau/Port Warden and Grain Inspector's |
| 133 |  | certificate of vessel's readiness in all compartments to be loaded, for the entire cargo covered by the Charterparty as per Clause 3. In the event that vessel loads in subsequent port(s) and is required to |
| 134 |  | re-pass inspections in these ports, any time lost thereat in securing the required certificates shall not count as laytime or time on demurrage. |
| 135 | **Laytime** | 19 *(a)* Vessel is to be loaded and discharged **See Clause 61** within    working days of twenty four (24) consecutive hours each (weather permitting). |
| 136 |  | Sundays and Holidays excepted. |
| 137 |  | *(b)* Vessel is to be loaded within    working days of twenty four (24) consecutive hours each (weather permitting). |
| 138 |  | Sundays and Holidays excepted. |
| 139 | **Delete** | *(c)* Vessel is to be discharged at **one safe berth Buenaventura, Colombia  – NAABSA  (not always afloat but safe aground) at the** average rate of (**See Clause 61**) tons of 2,240 lbs.*/1,000 kilos.* per |
| 140 | **para** | working day of twenty four (24) consecutive hours |
|  | *(a) , (b)* | (weather permitting), **Sundays and Holidays**  excepted on the basis of the Bill of Lading weight. |
|  | *or (c)* |  |
|  | *as* |  |
|  | *appropriate* |  |
| 141 |  | *(d)* Notwithstanding any custom of the port to the contrary, Saturdays shall not count as laytime at loading and discharging port or ports where stevedoring labor and/or grain handling facilities |
| 142 |  | are unavailable on Saturdays or available only at overtime and/or premium rates. |
| 143 |  | In ports where only part of Saturdays is affected by such conditions, as described above, laytime shall count until the expiration of the last straight time period. |
| 144 |  | Where six or more hours of work are performed at normal rates, Saturdays shall count as a full lay day. |
| 145 |  | *(e)* In the event that the vessel is waiting for loading or discharging berth, no laytime is to be deducted during such period for reasons of weather unless the vessel occupying the loading or |
| 146 |  | discharging berth in question is actually prevented from working grain due to weather conditions in which case time so lost is not to count. |
| 147 | **Demurrage/** | 20. Demurrage at loading and/or discharging ports is to be paid **See Clause 64** at the rate of…………………………………………………………………………… per day or *pro rata* |
|  |  | for part of a |
| 148 | **Despatch** | day and shall be paid by Charterers in respect of loading port(s) and by Charterers/Receivers* in respect of discharging port(s). Despatch money to be paid by Owners at half the demurrage rate for all |
| 149 |  | **laytime saved at loading and/or discharging ports** |
| 150 |  | Any time lost for which Charterers/Receivers are responsible, which is not excepted under this Charterparty, shall count as laytime, until same has expired, thence time on demurrage. |
| 151 | **Shifting** | 21. *(a)* **Shifting expenses and time See Clause 62** |
| 152 |  | (i) Cost of shifting between loading berths and cost of shifting between discharging berths, including bunker fuel used, to be for Owners'*/Charterers'/Receivers'* account,time |
| 153 |  | counting. |
| 154 |  | (ii) If vessel is required to shift from one loading or discharging berth to a lay berth or anchorage due to subsequent loading or discharging berth(s) not being available, all such |
| 155 |  | . shifting expenses, as defined above shall be for Owners'*/Charterers'/Receivers'* account, time counting. |
| 156 |  | (iii) If the vessel shifts from the anchorage or waiting place outside the port limits either directly to the first loading or discharging berth or to a lay berth or anchorage within the port |

157 limits the cost of that shifting shall be for Charterers'/Receivers'* account and vessel shall remain on demurrage.

158 (iv) ~~Cost of shifting from lay berth or anchorage within the port limits to first loading or first discharging berth to be for Owners' account, and~~ time counting.

159 **(b) Shifting in and out of the same berth See Clause 62**

160 ~~If vessel is required by Charterers/Receivers* to shift out of the loading berth or the discharging berth and back to the same berth, one berth shall be deemed to have~~

161 ~~been used, but shifting expenses from and back to the loading or discharging berth so incurred shall be for Charterers'/Receivers'* account and laytime or time on demurrage shall count.~~

162 **(c)** ~~Overtime expenses for vessel's officers and crew shall always be for Owners' account.~~ **See Clause 62**

163 **Gear and** 22. If required, the Master is to give free use of vessel's cargo gear, including runners, ropes and slings as on board, and power to operate the same

**lights**

164 ~~Vessel's personnel is to operate the gear if permitted to do so by shore regulations, failing which shore operators are to be used.~~

165 ~~Such~~ shore operators are to be for ~~Owners' account at loading port(s) if the provisions of Clause 10(b) apply, otherwise~~ Charterers' account at loading and Charterers'*/Receivers'* account at

166 discharging port(s).

167 Time lost on account of breakdowns of vessel's gear essential to the loading or discharging of this cargo is not to count as laytime or time on demurrage, **prorata for the period of such inefficiency in relationship to the number of cranes** and if Clause 10 (a) applies any stevedore

168 standby time charges incurred thereby shall be for Owners' account,. **Owner's option to employ shore crane in which case time to count as usual.  In case gear breakdown are caused by stevedore damage/mishandling time to count as laytime or time on demurrage. See Clause 47**

169 If required, Master shall give free use of the vessel's lighting as on board for night work.

170 **Seaworthy** 23. If ordered to be loaded or discharged at two or more ports, the vessel is to be left in seaworthy trim **and stability** to Master's satisfaction (not exceeding the requirements of the safety of Life at

Sea Convention

171 **Trim** as applied in the country in which such ports are situated) for the passage between ports at Charterers' expense at loading and at Charterers'/Receivers' expense at discharging ports, and time used for

172 placing vessel in seaworthy trim shall count as laytime or time on demurrage.

173 **Draft/** 24. ~~Owners warrant the vessel's deepest salt water draft shall not exceed~~ ........................... ~~feet~~........... ~~inches on completion of loading and~~ ........................... ~~feet~~...................................... ~~inches~~

**Lighterage**

174 ~~on arrival at first or sole discharging port.~~

175 Should the vessel be ordered to discharge at a place in which there is not sufficient water for her to get the first tide after arrival without lightening, and lie always afloat, laytime is to count as per Clause

176 18 at a safe anchorage for similar vessels bound for such a place and any lighterage expenses incurred to enable her to reach the place of discharge is to be at the expense and risk of the cargo, any

177 custom of the port or place to the contrary notwithstanding, but time occupied in proceeding from the anchorage to the discharging berth is not to count as laytime or time on demurrage.

178 ~~Unless loading and/or discharging ports are named in this Charterparty,~~ the responsibility for providing safe port of loading and/or discharging lies with the Charterers/~~Receivers*~~ provided Owners

179 have complied with the maximum draft limitations. ~~in Lines 173/174.~~ **this clause**

180 **Car Decks** 25. It is understood that if this vessel is fitted with car decks, container fittings and/or any other special fittings not connected with the carriage of grain in bulk, any extra expenses incurred in loading

181 **etc** and/or discharging as a result of the presence of such car decks, container fittings or special fittings are to be for Owners' account. Time so lost shall not count as laytime or time on demurrage.

182 **Dues and/or** 26. **See Rider Clause 65** ............................................................................................................................................

183 **Taxes** ...............................................................................................................................................................................

184 ...............................................

185 **Seaway Tolls** 27. ~~All St. Lawrence Seaway and/or Welland Canal tolls on vessel and/or cargo assessed by Canadian and United States Authorities are to be paid and borne by Owners.~~

186 28. Any time lost on account of vessel's non-compliance with Government and/or State and/or Provincial regulations pertaining to water pollution shall not count as laytime or time on demurrage.

29. ~~Owners*/Charterers* are to appoint agents at loading port(s) and Owners*/Charterers* are to appoint agents at discharging port(s).~~ **See Clause 66**

187 **Agents**

188 In all instances, agency fees shall be for Owners' account but are not to exceed customary applicable fees

189 **Strikes,** 30. If the cargo cannot be loaded by reason of Riots, **facilities breakdowns,** Civil Commotions or of a Strike or Lock-out of any class of workmen essential to the loading of the cargo, or by reason of

190 obstructions or stoppages

**Stoppages,** beyond the control of the Charterers caused by Riots, **facilities breakdowns,** Civil Commotions or a Strike or Lock-out on the Railways or in the Docks or other loading places, or if the cargo cannot be

191 **etc.** discharged by reason

of Riots, **facilities breakdown,** Civil Commotions, or of a Strike or Lock-out of any class of workmen essential to the discharge, the time for loading or discharging, as the case may be, shall not count

192 | during the continuance of such causes, provided that a Strike or Lock-out of Shippers' and/or Receivers' men shall not prevent demurrage accruing if by the use of reasonable diligence they could have obtained other suitable
193 | labor at rates current before the Strike or Lock-out. In case of any delay by reason of the before mentioned causes, no claim for damages or demurrage shall be made by the Charterers/Receivers of the
194 | cargo or Owners of the vessel. For the purpose, however, of settling despatch rebate accounts, any time lost by the vessel through any of the above causes shall be counted as time used in loading, or discharging, as the case may be **after 48 hours of strike or any kind of lock out. Owners and Charterers to review the possibility to discharge at an alternative port, Charterers to do their utmost**
195 | **to assist otherwise as per C/P.**

196 Ice | 31. **Loading Port**
197 | ( *a)* If the Vessel cannot reach the loading port by reason of ice when she is ready to proceed from her last port, or at any time during the voyage, or on her arrival, or if frost sets in after her
198 | arrival, the Master for fear of the Vessel being frozen in is at liberty to leave without cargo; in such cases this Charterparty shall be null and void.
199 | *(b)* If during loading, the Master, for fear of Vessel being frozen in, deems it advisable to leave, he has the liberty to do so with what cargo he has on board and to proceed to any other port with
200 | option of completing cargo for Owners' own account to any port or ports including the port of discharge. Any part cargo thus loaded under this Charterparty to be forwarded to destination at Vessel's
201 | expense against payment of the agreed freight, provided that no extra expenses be thereby caused to the Consignees, freight being paid on quantity delivered (in proportion if lump sum), all other
202 | conditions as per Charterparty.

203 | *c)* In case of more than one loading port, and if one or more of the ports are closed by ice, the Master or Owners to be at liberty either to load the part cargo at the open port and fill up elsewhere
204 | for the Owners' own account as under sub clause *(b)* or to declare the Charterparty null and void unless the Charterers agree to load full cargo at the open port.
205 | **Voyage and Discharging Port**
206 | *d)* Should ice prevent the Vessel from reaching the port of discharge, the Charterers/Receivers shall have the option of keeping the Vessel waiting until the re-opening of navigation and paying
207 | demurrage or of ordering the vessel to a safe and immediately accessible port where she can safely discharge without risk of detention by ice. Such orders to be given within 48 hours after the Owners
208 | or Master have given notice to the Charterers/Receivers of impossibility of reaching port of destination.

209 | (*e)* If during discharging, the Master, for fear of Vessel being frozen in, deems it advisable to leave, he has liberty to do so with what cargo he has on board and to proceed to the nearest safe
210 | and accessible port. Such port to be nominated by Charterers/Receivers as soon as possible, but not later than 24 running hours, Sundays and holidays excluded, of receipt of Owners' request for
211 | 21 nomination of a substitute discharging port, failing which the Master will himself choose such port.

212 | (f) On delivery of the cargo at such port, all conditions of the Bill of Lading shall apply and the Owners shall receive the same freight as if the Vessel had discharged at the original port of
213 | destination, except that if the distance to the substitute port exceeds 100 nautical miles the freight on the cargo delivered at that port to be increased in proportion.

214 Extra | 32. Any extra insurance on cargo incurred owing to vessel's age, class, flag or ownership to be for Owners' account up to a maximum of ..................................................and may be deducted from the
215 Insurance | freight, in Charterers' option. The Charterers shall furnish evidence of payment supporting such deduction. (**See Clause 67**)

216 P. & I. | 33. The vessel shall have the liberty as part of the contract voyage to proceed to any port or ports at which bunker oil is available for the purpose of bunkering at any stage of the voyage whatsoever
217 Bunker | and whether such ports are on or off the direct and/or customary route or routes between any of the ports of loading or discharge named in this Charterparty and may there take oil bunkers in any quantity
218 Clause | in the discretion of Owners even to the full capacity of bunker tanks and deep tanks and any other compartment in which oil can be carried whether such amount is or is not required for the chartered
219 | voyage..

220 Deviation | 34. Any deviation in saving or attempting to save life or property at sea or any reasonable deviation shall not be deemed to be an infringement or breach of this Charterparty and the Owners shall not
221 | be liable for any loss or damage resulting therefrom; provided, however, that if the deviation is for the purpose of loading or unloading cargo or passengers it shall, *prima facie*, be regarded as unreasonable. **Unless the rules of the Maritime law that rule the deviation says the contrary, the Ship Owner shall be liable for any unjustified route deviations that may cause any delay or damages to the cargo, in which case the charterers will be entitled, at their choice, to: (i) treat the charter as repudiated and claim damages; or (ii) treat the charter as subsisting and reserving their rights to claim damages.**

| **If the deviation is fully responsibility of owner, any delay in the production process of the receivers due to lack of commodity will be owners account.**

222 Lien and | 35. The Owners shall have a lien on the cargo for freight, deadfreight, demurrage, and average contribution due to them under this Charterparty.
Cesser Clause |
223 | Charterers' liability under this Charterparty is to cease on cargo being shipped except for payment of freight, deadfreight, and demurrage at loading, and except for all other matters provided for in this
224 | Charterparty where the Charterers' responsibility is specified.

225 Exceptions | 36. Owners shall be bound before and at the beginning of the voyage to exercise due diligence to make the vessel seaworthy and to have her properly manned, equipped and supplied and neither the
226 | vessel nor the Master or Owners shall be or shall be held liable for any loss of or damage or delay to the cargo for causes excepted by the U.S. Carriage of Goods by Sea Act, 1936 or the Canadian
227 | Carriage of Goods by Water Act, 1970, or any statutory re-enactment thereof.

228 | And neither the vessel, her Master or Owners, nor the Charterers or Receivers shall, unless otherwise in this Charterparty expressly provided, be responsible for loss of or damage or delay to or failure
229 | to supply, load, discharge or deliver the cargo arising or resulting from:-Act of God, act of war, act of public enemies, pirates or assailing thieves; arrest or restraint of princes, rulers or people; seizure
230 | under legal process, provided bond is promptly furnished to release the vessel or cargo; floods; fires; blockades; riots; insurrections; Civil Commotions: earthquakes; explosions. No exception afforded
231 | the Charterers or Receivers under this clause shall relieve the Charterers or Receivers of or diminish their obligations for payment of any sums due to the Owners under provisions of this Charterparty.

232 U.S.A. | 37. If the vessel loads in the U.S.A. the U.S.A. Clause Paramount shall be incorporated in all Bills of Lading and shall read as follows:
Clause |

**Paramount**

233 ~~"This Bill of Lading, shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, or any statutory re-enactment thereof, which shall~~
234 ~~be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities~~
235 ~~under said Act. If any term of this Bill of Lading be repugnant to said Act to any extent, such terms shall be void to that extent but no further.~~"General Paramount" as per CONGENBILL 2007 to be included in this Charterparty and the bills of lading issued hereunder.

236 ~~38. If the vessel loads in Canada the Canadian Clause Paramount shall be incorporated in all Bills of Lading and shall read as follows:~~

**Canadian Clause**

237 ~~"This Bill of Lading, so far as it relates to the carriage of goods by water, shall have effect, subject to the provisions of the Carriage of Goods by Water Act, 1970. Revised Statutes of Canada~~

**Paramount**

238 ~~Chapter C-15, enacted by the Parliament of the Dominion of Canada, or any statutory re-enactment thereof, which shall be deemed to be incorporated herein, and nothing herein contained shall~~
239 ~~be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under the said Act. If any term of this Bill of Lading be repugnant to said~~
240 ~~Act to any extent, such term shall be void to that extent, but no further."~~

241 **Both-to-** 39. If the liability for any collision in which the vessel is involved while performing this Charterparty falls to be determined in accordance with the laws of the United States of America, the following
242 **Blame** clause shall apply:
**Collision**

243 **Clause** "If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the master, mariner, pilot or the servants of the Carrier in the
244 navigation or in the management of the vessel, the owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so
245 far as such loss or liability represents loss of or damage to or any claim whatsoever of the owners of the said goods, paid or payable by the other or non-carrying vessel or her owners to the owners of
246 the said goods and set off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying vessel or Carrier."
247 The foregoing provisions shall also apply where the Owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in
248 respect to a collision or contact."

249 The Charterers shall procure that all Bills of Lading issued under this Charterparty shall contain the same clause.

250 **General** 40. General Average shall be adjusted according to the York/Antwerp Rules 1974 and shall be settled in **New York, US** ...................................................................
**Average/**

251 **New** Where the adjustment is made in accordance with the law and practice of the United States of America, the following clause shall apply:
**Jason**

252 "In the event of accident, danger, damage or disaster before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for the consequences of
253 which, the Carrier is not responsible, by Statute, contract or otherwise, the goods, shippers, consignees or owners of the goods shall contribute with the Carrier in general average to the payment of any
254 sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

255 If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier or his agents may deem
256 sufficient to cover the estimated contribution of the goods and any salvage and special charges theron shall, if required, be made by the goods, shippers, consignees or owners of the goods to the Carrier
257 before delivery."

258 The Charterers shall procure that all Bills of Lading issued under this Charterparty shall contain the same clause.

259 **War** 41. 1. The Master shall not be required or bound to sign Bills of Lading for any blockaded port or for any port which the Master or Owners in his or their discretion consider dangerous or impossible
260 **risks** to enter or reach.

261 2. *(A)* If any port of loading or of discharge named in this Charterparty or to which the vessel may properly be ordered pursuant to the terms of the Bills of Lading be blockaded, or

262 *(B)* if owing to any war, hostilities, warlike operations, civil war, civil commotions, revolutions, or the operation of international law *(a)* entry to any such port of loading or of discharge
263 or the loading or discharge of cargo at any such port be considered by the Master or Owners in his or their discretion dangerous or *(b)* it be considered by the Master or Owners in his or their discretion
264 dangerous or impossible for the vessel to reach any such port of loading or of discharge the Charterers shall have the right to order the cargo or such part of it as may be affected to be loaded or
265 discharged at any other safe port of loading or of discharge within the range of loading or discharging ports respectively established under the provisions of the Charterparty (provided such other port
266 is not blockaded or that entry thereto or loading or discharge of cargo thereat is not in the Master's or Owners' discretion dangerous or prohibited). If in respect of a port of discharge no orders be
267 received from the Charterers within 48 hours after they or their agents have received from the Owners a request for the nomination of a substitute port, the Owners shall then be at liberty to discharge
268 the cargo at any safe port which they or the Master may in their or his discretion decide on (whether within the range of discharging ports established under the provisions of the Charterparty or not)
269 and such discharge shall be deemed to be due fulfillment of the contract or contracts of affreightment so far as cargo so discharged is concerned. In the event of the cargo being loaded or discharged at
270 any such other port within the respective range of loading or discharging ports established under the provisions of the Charterparty, the Charterparty shall be read in respect of the freight and all other

271 conditions whatsoever as if the voyage performed were that originally designated. In the event, however, that the vessel discharges the cargo at a port outside the range of discharging ports established
272 under the provisions of the Charterparty, freight shall be paid as for the voyage originally designated and all extra expenses involved in reaching the actual port of discharge and/or discharging the cargo

273 thereat shall be paid by the Charterers or Cargo Owners. In this latter event the Owners shall have a lien on the cargo for all such extra expenses.

274 3. The vessel shall have liberty to comply with any directions or recommendations as to departure, arrival, routes, ports of call, stoppages, destinations, zones, waters, delivery or in any other
275 wise whatsoever given by the government of the nation under whose flag the vessel sails or any other government or local authority including any de facto government or local authority or by any

276    person or body acting or purporting to act with the authority of any government or authority or by any committee or person having under the terms of the war risks insurance on the vessel
277    the right to give any such directions or recommendations. If by reason of or in compliance with any such directions or recommendations, anything is done or is not done such shall not be deemed a

278    deviation.
279    If by reason of or in compliance with any such directions or recommendations the vessel does not proceed to the port or ports of discharge orginally designated or to which she may have been ordered
280    pursuant to the terms of the Bills of Lading, the vessel may proceed to any safe port of discharge which the Master or Owners in his or their discretion may decide on and there discharge the cargo. Such
281    discharge shall be deemed to be due fulfilment of the contract or contracts of affreightment and the Owners shall be entitled to freight as if discharge has been effected at the port or ports originally
282    designated or to which the vessel may have been ordered pursuant to the terms of the Bills of Lading. All extra expenses involved in reaching and discharging the cargo at any such other port of discharge
283    shall be paid by the Charterers and/or Cargo Owners and the Owners shall have a lien on the cargo for freight and all such expenses.

284 **Address**    42. An address commission of -% on gross freight, deadfreight and demurrage is due to Charterers at time freight and/or demurrage is paid,

285 **Commission**    vessel lost or not lost, Charterers having the right to deduct such commission from payment of freight and/or demurrage.

286 **Brokerage Commission**    43. A brokerage commission of % on gross freight, deadfreight and demurrage is payable by Owners to **MID-SHIP Group, LLC.**

287

288    at time of receiving freight payment and/or demurrage payments(s), vessel lost or not lost.
289 **Assignment**    ~~44. Charterers have the privilege of transferring/assigning/reletting all or part of this charterparty to others (guaranteeing to the Owners the due fulfilment of this Charterparty).~~ **See Clause 74**
290 **Arbitration**    45. *(a)* All disputes arising out of this contract shall be arbitrated at New York in the following manner, and be subject to U.S. Law:

291    One Arbitrator is to be appointed by each of the parties hereto and a third by the two so chosen. Their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this
292    . agreement may be made a rule of the court. The Arbitrators shall be commercial men, conversant with shipping matters. Such Arbitration is to be conducted in accordance with the rules of the Society
293    of Maritime Arbitrators Inc.

**This Contract is construed in accordance with U.S Law.**
**Any claim must be made in writing and the claimants' arbitrator appointed within 12 months of final discharge and where this provision is not complied with the claim shall be deemed to waived and absolutely barred.**
294    For disputes where the total amount claimed by either party does not exceed U.S.$ ... **50,000 (fifty thousand US Dollars) exclusive of interest on the sum claimed, costs of arbitration and legal expenses**........................................................ ** the arbitration shall be conducted in accordance with the
295    Shortened Arbitration Procedure of the Society of Maritime Arbitrators Inc.
296    ~~(b London. All disputes arising out of this contract shall be arbitrated at London and, unless the parties agree forthwith on a single Arbitrator, be referred to the final arbitrment of two~~

297    ~~Arbitrators carrying on business in London who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in the Shipping and/or Grain Trades, one to be appointed by each of the~~

   ~~parties, with power to such Arbitrators to appoint an Umpire. No award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as above, unless objection to his~~

298

   ~~action be taken within 2 weeks of appointment before the award is made. Any dispute arising under this Charterparty hereunder shall be governed and construed by English Law.~~

299

300    ~~For disputes where the total amount claimed by either party does not exceed U.S. $ * the arbitration shall be conducted in accordance with the~~
301    ~~Small Claims Procedure of the London Maritime Arbitrators Association.~~

   ~~**Where no figure is supplied in the blank space this provision only shall be void but the other provisions of this clause shall have full force and remain in effect.~~

**Whenever the word Steamer Appears in this Charterparty, it is understood to mean "Motor Vessel"**

**Additional Rider Clauses number 46 to 82, both inclusive, as attached hereto, are deemed as fully incorporated into this Charter Party.**

**Rider Clauses to the M/V**
**Charter Party dated:**

### CLAUSE 46

Arbitration in New York and US Law to apply.

All disputes arising out of this contract shall be arbitrated at New York and, unless the parties agree forthwith on a single arbitrator, be referred to the final arbitrament of two arbitrators carrying on business in New York who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in the shipping and/or grain trades, one to be appointed by each of the parties, with power to such arbitrators to appoint an umpire. No award shall be questioned or invalidated on the ground that any of the arbitrators is not qualified as above, unless objection to his action be taken within 2 weeks of appointment before the award is made. Any dispute arising under this Charter Party hereunder shall be governed and construed by US Law.

This contract is construed in accordance with US Law. Any claim must be made in writing and claimants arbitrator appointed within 12 months of final discharge and where this provision is not complied with the claim shall be deemed to waived and absolutely barred for disputes where the total amount claimed by either party does not exceed U.S. $ ... 50,000 (fifty thousand us dollars) exclusive of interest on the sum claimed, costs of arbitration and legal expenses * the arbitration shall be conducted in accordance with the small claims procedure of the American Arbitration Association.

### CLAUSE 47 - VESSELS' DESCRIPTION

Vessel Description:

The Baltic Exchange Dry Cargo Questionnaire (BALTIC99)

Vessel Itinerary

| Port | ETA | ETD |
|------|-----|-----|

Performing vessel to be nominated by owners latest 10 calendar days prior to first day of laycan.

Owners have the right to substitute the vessel up to 12 hours New York time 8 calendar days prior to vessel ETA to load port, vessel to arrive within laycan agreed but not earlier than ETA of the initial nominated vessel.

All vessel nominations/substitutions to be subject to charterers/shippers/receivers confirmation/approval within next 24 hours Saturdays, Sundays, Holidays excluded after receiving same within New York office hours 08:00-16:00 Saturdays, Sundays, Holidays excluded and same not to be unreasonably withheld and once all vessel's certificates, GA Plan, last 5 cargoes, Baltic Questionnaire (if available) and water line to hatch coaming distances on arrival and departure as per below.

If certificates are missing with the vessel nomination, the nomination will be subject to certificates presentation without prejudice to declare the vessel nomination null and void.

Ship owner will be allowed to make one substitution of vessel, provided that substituting vessel is of the same type and approximately the same size and position of the unsubstituted vessel. If the substituting vessel is unable to lift the commodity by reason of the vessel having sunk or having suffered incapacitating physical damage, an additional substitution shall be made of a vessel of the same type and approximately the same size, and with a position agreeable to charterers. Such agreement shall not be unreasonably withheld. Charterers reserve their rights to reconfirm such substitution latest 1 working day after receiving the nomination same not to be unreasonably withheld.

The charterer has right to request extension of time for approval but not extension longer than 48 hours to be permitted unless agreed or accepted and provided owners have same extension with head owners if the vessel is on subs.

1

**Rider Clauses to the M/V
Charter Party dated:**

Clause 47.          (Continued)

The vessel shall be approved or rejected based on its technical specifications, seaworthiness, analysis of requested certificates and in case part cargo, stowage plan to be presented with nomination.

Vessel approval do not depend upon the stowage plan, however if charterer does not approve stowage plan, then owner should suggest different alternatives to load until getting to a mutual agreement. If not mutual agreement is reached charterers to have the right to reject the vessel.

If vessel loads to full dwt capacity with high density cargoes (i.e cargoes stowing less than 35cft/mt), then vessel to be loaded homogeneously vessel's general desc is given basis all about and in good faith but without guarantee. Vessel's speed is warranted basis 'about' and vessels consumption is warranted basis 'about'

On nomination, owners to advise:

- Full description:
- Hatch sizes:
- Hatch type:
- Class/P+I club:
- IMO number
- Number of hatches and holds:
- Last five cargoes:
- Last five port calls:
- GA plan
- Intended cargo intake and stow plan:
- Present position and ETA loading port:
- Other requirements as per loading conditions

Owners confirm vessel to be/have:

- Self-trimming SDBC eng/br aft
- Max 5 ho/ha
- Max 15 yrs
- Geared with minimum 4 x 30 MT cranes, same to service all holds where cargo is stowed, each crane serving all 4 hatches simultaneously and independently. Owners warrant that vessels gear can maintain this lifting capacity even when all gear working simultaneously.
- Classed highest Lloyds or equivalent by a member of the IACS for entirety of voyage
- Fully ISM and P+I covered for the duration of the voyage
- No centerline beam/bulkheads/fittings/obstructions in holds
- Vessel to be fully suitable for grab discharge
- Vessel to be suitable in all respects for all load and discharge ports/berths/facilities including but not limited to LOA/beam/draft/gear/ water line to hatch coaming.
- Owners to satisfy themselves regarding the prevailing regulations, requirements and restrictions at the loading and discharging port(s), anchorage(s) and faciliti(es) / terminal(s), and they confirm that they are conversant with the trade.
- No cargo commingling allowed
- Warping alongside shipper's berth for owners' time and account.
- No welding or cutting to be performed onboard as long as our cargo is onboard.
- Owners to warrant holds to be cleaned, free of any material, odors, etc. that may contaminate the cargo. Otherwise as per Charter Party.
- Vessel to be ITF approved.
- Owners confirm that if vessel is required by terminal to be turn around at load port, such

2

**Rider Clauses to the M/V**
**Charter Party dated:**

Clause 47.          (Continued)

costs will be for owners time/risk and account otherwise as per cp (meaning vessel has to face in the direction the berth is designed and not to switch vessel direction during loading).

-    Otherwise based on CP requirements

Owners to present following certificates and owners confirmation that same are up to date/valid for entirety of voyage:

-    Ship Safety Construction certificate:
-    Ship Safety Equipment certificate:
-    Ship Safety Radio certificate:
-    International Tonnage certificate:
-    International Load Line certificate:
-    SMC certificate:
-    International Oil Pollution certificate:
-    DOC and ISM certificate:
-    P & I Club certificate:
-    ISPS certificate:
-    Vessels Gear certificate:
-    Owners to advise full ownership chain of performing vessel on nomination:
-    Owners confirm vessel is min 3 star Right Ship approved
-    Vessel/owners/operator to fully comply with ISM Code/clause
-    Vessel to have flat steel floored tanks top
-    Vessel must not have suffered any G.A. and collision last 12 months:
-    Vessel must not have any recommendations by state control
-    Vessel to be ITF fitted or equivalent:
-    Vessel to have a crew which comply with S.T.C.W.
-    Vessel to comply with load port/discharge port terminal rules
-    Vessel to proceed from loading port to discharge port at minimum 11 knots, weather permitting.
-    Macgregor or similar folding type hatchcovers or side rolling hatchcovers (no tween hatches/pontoon hatchcovers)
-    Otherwise based on Charter Party requirements

Ship owner to endeavor to provide above documents as soon as possible. Same not to be a reason to withhold the nomination. Charterers not to be responsible in case there is some problem with port authorities due to vessel certificates during load and discharge operations.

Owners confirm performing vessels to be in accordance with the requirements of the charter party including reference to owners responsibility for vessel to be suitable in all respects for loading/discharge berths/ports/facilities.

Owners confirm vessels ballasting/deballasting speeds are sufficient to maintain load/discharge rates as agreed below.

Owners warrant that the vessels recent trading patterns do not contravene with any applicable trading embargoes at countries of loading/discharging or would otherwise affect the execution of this voyage.

Owners warrant that the vessel is insured for hull and machinery risks and is insured.

The vessel must be suitable for grab discharge and suction vacuum discharge. The vessel must have hatches with electrical/hydraulic folding type design.

3

**Rider Clauses to the M/V**
**Charter Party dated:**

Clause 47.        (Continued)

Owners confirm vessel will be presented at load port and will perform as a single decker bulk carrier for this voyage with no fitting obstructions affecting load / discharge operations. Any time, risk and extra costs due to holds preparation for loading / discharging and pontoon's repositioning to be for owners account.

Vessel to have normal protection or insulation between engine room/fuel tanks and cargo holds as is customary for a standard bulker suitable to load grains. If Charterers require additional protection for cargo beyond what's considered normal and customary, Charterers to provide additional insulation/protection for their time and account always subject to master's approval.

Ship owner warrants that the vessel is in all respects eligible for trading to the port, places or countries specified in this charter party and that the vessel and/or ship owner shall have all valid certificates, records or other documents required for such trade.

No trans-shipments allowed unless requested by charterer.

Ship owner to inform charterers if holds painting prior and before loading or during vessel acceptance.

JIB type grabs for charterers account but if performing vessel equipped with different type of cranes as customary for standard bulker, such those mounted with gantry cranes, owners to be responsible to provide grabs and same to be owners time, risk and account.

If grabber vessel, charterers have the option to free use grabs as on board subject to owners' final approval.

Ship owners to provide sufficient light as on board for night work.

The owner guarantees that vessel has fully working cranes/ winches and power to drive the gears/ ropes/ runners/ slings.

In case of cranes break down, ship owner to be responsible, time not to count as laytime pro rata unless ship owner decide to use shore cranes, in which case, time to resume count and costs of such shore crane to be for ship owner account.

No derricks allowed.

Vessel sailing at optimal full or economic safe speed and capacity. If vessels economic safe speed is less than 11 knots, any delay or claim for slow speed / steaming to be for owners account.

Flag: The following is the list of banned flag countries:
Cuba, North Korea, Libya, Iran, Iraq, Abkhazia, Afghanistan, Algeria, Angola, Armenia, Bosnia Herzegovina, Burundi, Cambodia, Eritrea, Ethiopia, Georgia, (Africa) Guinea, Haiti, Kazakhstan, Kyrgyzstan, Kuwait, Laos, Lebanon, Moldova, Mozambique, Nigeria, Republic of the Congo, Rwanda, Sierra Leone, Syria, Somalia, Sri Lanka, Sudan, Tajikistan, Turkmenistan, Uganda, Uzbekistan, Zaire and Zimbabwe or any other in the OFAC list at the time of nomination.

Ship owner accepts they will inform during the vessel nomination or any other moment during the execution of the charter party but before the loading process if they have to change flag, class, ownership, P&I Club or H&M underwriters and will provide all the necessary information acting with utmost good faith.

Vessel's seaworthiness and cargo working capability will be maintained throughout the entire duration of this charter.

## CLAUSE 48 - LOADING AND DISCHARGE PORTS

Load: 1 safe berth / safe anchorage Mississippi River including Baton Rouge or a RIG at Mississippi river loading from barges excluding Port Allen (LDC terminal) where vessel to load and

**Rider Clauses to the M/V**
**Charter Party dated:**

Clause 48.       (Continued)

sail basis prevailing drafts.

Discharge: 1 safe berth Buenaventura, Colombia (NAABSA) not always afloat but safely aground.

Port restrictions will be always owners account both ends. The owner confirm that the vessel comply with all port regulation and requirements at load and discharge ports and any time lost or directly related expenses due to non-compliance by vessel, will be for the owners' time and account.

The owner must contact prior to arrival, the shipping agent and the port/ terminal in order to confirm and account all the conditions and restrictions ruled.

Owners responsibility for vessel to get under and stay under loading/ discharging facilities throughout loading/discharging operations and to arrive/berth/load/discharge/sail basis prevailing draft.

Owners to satisfy themselves as to any/all load/discharge port facilities/berths restrictions including but not limited to draft/LOA/beam/air draft/water line to hatch coaming - charterers do not warrant same in any way - this is solely owners' concern. Understood ports/berths restriction to remain owners full responsibility.

## CLAUSE 49 - DESCRIPTION OF CARGO

A full (sole) and complete cargo of 40,000 metric tons 10 percent more or less in Owners' option harmless grains/grain prods/agri prods in bulk in up to three grades breakdown as follows:

29,000 metric tons 10 percent more or less in Owners' option yellow corn

Plus

5,000 metric tons 10 percent more or less in Owners' option soy bean meals

Plus

6,000 metric tons 10 percent more or less in Owners' option soft red winter wheat

Always supplied by Charterers' to the nearest 100 metric tons more or less in Charterers' option of Owners' declared quantity provided same approved by USDA/NCB.

If more than one product to be loaded, owners' warrant performing vessel(s) to naturally segregate products as described above in separate holds; no artificial separation(s) to be required or allowed.

Charterers' cargo by grades not to be commingled in vessel's holds.

If part cargo always charterers' cargo to be last in/first out. Vessel rotation in owners' option both ends.

Charterers cargo shall not be mixed with any other product or substance to avoid contamination.

Cargo to be only loaded in unobstructed self-trimming or box shaped holds that are in every respect suitable for grab discharge. Regarding storage: no deep tanks storage, no wing tank storage.

Cargo to be spout trimmed, not extra shoveling/trimming to be required.

Any additional trimming beyond spout trimming to be for owners account, any other bagging/strapping required and or related expenses, and time lost for same to be for ship

**Rider Clauses to the M/V**
**Charter Party dated:**

Clause 49.          (Continued)

owner's account, unless same is requested by charterers.

Charterers cargo by grades to be stow by natural separations.

Owners understand that the cargo should not be subject to temperatures exceeding 30 degrees, so if owner presumes the cargo could be exposed to higher temperatures, owner to advise immediately to charterer and do the utmost to avoid damages to the cargo.

## CLAUSE 50 - SHIPMENT SIZE

Deleted

## CLAUSE 51 — LAYCAN

Laycan:

## CLAUSE 52 - CANCELLING

Should vessel not be ready to load whether in berth or not by the canceling date, charterers have the option of canceling the voyage with such option declarable by charterers not later than on vessel's arrival at the loading port.

## CLAUSE 53 - NOTICES

To be informed by 10, 8, 7, 5, 3, 2, 1 days in advance of estimated time of arrival to the loading and discharge terminal or must inform any alteration in vessels arrival.

## CLAUSE 54 - VESSEL & CARGO INSPECTION

Before loading/ discharge is commenced vessel shall pass the customary survey from any official recognized marine surveyor approved by the shippers. Additionally, the vessel shall pass any survey/inspection required under state and/or federal legislation.

Ship owner to cooperate with customary surveillance required on the cargo, charterer will inform to ship owner through the appropriate channel. Surveillance on the cargo on charterers' time & account. Microbiologic certificates: by charterer account.

Ship owner to cooperate with any surveillance or inspection required on the vessel and the documentation at the loading or unloading port. This includes visit to the engine rooms if required to make inspection to the insulation between engine rooms and closest hold.

At load and discharging ports, free access to the vessel, including engine rooms and her papers (as far as the survey is concerned) is granted to the surveyor(s) appointed by the charterers.

While the surveyor is taking tank soundings, master is not to take on, release or switch from one tank or other compartment to another, any ballast, fresh water or fuel oil.

Charterer shall inform type of surveys required and appointed surveyors before first day of laycan. Captain should allow the surveys.

Time used by the master for draft survey for ship owner account. Time used by charts for draft survey for charterers account. In case ship owner or charterers willing to perform a draft survey during the operation at load or discharge ports, same to be at time and expenses for the party ordering same. However regarding the contract with the shipper any measurement dispute shall be clarified based on shore scale.

The vessels must have all sailing conditions to assure the quality of the cargo. Owners to allow charterers surveyors to inspect and issue following certificates otherwise as per Charter Party.

- Hold cleaning certificate of the ship issued by an international society of quality certification selected by the parties.

6

**Rider Clauses to the M/V**
**Charter Party dated:**

Clause 54.        (Continued)

- Sealing of covers and hatchways certificates of the contracted ship issued by a society of international certification of quality chosen by the parties.
- Holds water test Certificate, issued by a society of international certification of quality selected by the parties.

In case hatch cover water test is required by charterers to be performed, all cost and time to be for charterers account. Ship owner ready to provide charts results of last test performed.
Owners guarantee that vessel is ready in all respects to start the unloading process. Therefore, masters guarantee that the cleaning vessel procedure has been performed, hatches are clean and all the area around the hatches are free of plagues or any other particulars that might contaminate charterers cargo.

Vessel on arrival load port to present all holds clear from previous cargoes, fresh water washed, dry and in every respect clean and ready to load corn cargo in bulk to the satisfaction of an independent surveyor. Any costs and time involved in cleaning vessel to surveyor's satisfaction to be for owners' account. In the event that vessel is required to shift from berth as a consequence of not being clean, costs and time of such shifting and returning to berth to be for owners' account, time from vessel's holds being failed until passed not to count as laytime or time on demurrage, otherwise as per charter party.

The ship owner must present the vessel for loading with holds and hatches dry and clean, free of loose rust scale and any other contaminant substances and in all respects ready to receive the cargo to the local authority satisfaction.

All additional cleaning costs incurred as result of the vessel not being acceptable to charterers surveyors to be for ship owners account and time lost from time of rejection to the vessel again ready to be inspected shall not count against laytime or time on demurrage. The ship owners shall be liable for any damages directed to the vessel caused by the above mentioned circumstances. After completion of discharge holds to be machine/payloader/broom cleaned.

## CLAUSE 55 - LAYDAYS

Notice of Readiness at load port:

Understood vessel is not to tender Notice of Readiness prior to first layday.

Notice of Readiness at each load port shall be tendered in writing together with USDA/NCB passes and received by elevator between 08:00-17:00 hours Monday to Friday unless BIMCO holiday, Saturdays, Sundays, Holidays excluded.

Time to commence counting from 08:00 hours on the next day Saturdays, Sundays, Holidays excluded, whether in port or not, whether in berth or not, whether in free pratique or not, whether customs cleared or not.

Laytime load port time to commence at 08:00 hours next working day after valid Notice of Readiness tendered and accepted. Time not to count from 24:00 hours on Friday or 1700 hours on a day prior to holiday until 08:00 hours Monday or 08:00 hours next working day, even if used, after shipper/ consignee have received and accepted the master's valid written or telegraphic notice of readiness and she is accepted by the port authorities in free pratique and she is ready in all respects to load at such berth as ordered by shippers, orders as to loading/discharging berth shall be given to the vessel upon receipt of notice of her arrival in the port.

**Rider Clauses to the M/V**
**Charter Party dated:**

Clause 55.        (Continued)

At load port, shippers/ charterers have the privilege to inspect vessels holds and reject the notice when holds are not clean, dry odorless and in all respects ready to receive the cargo. (See Clause 54)

Notice of Readiness at discharge port:

Time to commence counting from 0800 hours next working day after valid Notice of Readiness is properly tendered/received in accordance with charter party terms. Unless soonest commenced which case APTUTC (actual prior time used to count).

At discharge port notice of readiness to be tendered during working hours Monday to Sunday (8:00 to 17:00) Sundays, holidays included. Provided the vessel is in free pratique, Customs cleared and she is in all respects ready to discharge.

Rain time, acts of God and Force Majeure cases excepted from laytime, but delays occurred due to lack of trucks and or warehouse space always to count as laytime. Notice of Readiness must be presented to the receiving agent at destination port designated by the buyer.

If the loading/ discharge berth is congested on vessel's arrival at or off the first or sole port of loading/ discharge or so near as she may be permitted to approach, the vessel shall be entitled to give Notice of Readiness during ordinary office hours on arrival there from safe or customary anchorage, with the effect that lay time counts as if she were in berth and in all respects ready for loading provided that the master warrants that she is in fact ready in all respects whether in berth or not, whether customs cleared or not, whether in free pratique or note, unless Customs clearance and free pratique can be normally obtained at the customary anchorage/waiting place. Actual time occupied in moving from place of waiting to loading berth not to count as laytime. If after berthing the vessel is found not to be ready in all respects to load, the actual time lost between the time of this discovery to the time that she is in fact ready to load shall not count as laytime.

## CLAUSE 56 - FREIGHT RATE

All freight rates per metric ton free in/out spout/grab trimmed basis 1-1:

Freight rate for the entire cargo to be equivalent of USD xxxxx per metric ton free in/out spout/grab trimmed basis 40,000/10 percent more or less in Owners option.

Cargo to be spout trimmed, not extra shoveling / trimming to be required. Any additional trimming beyond spout trimming to be for owners' account, any other bagging/strapping required and or related expenses, and time lost for same to be for ship owner's account, unless same is requested by charterers.

## CLAUSE 57 - FREIGHT PAYMENT

Freight is 100% payable to owners within five (5) banking days from completion of loading, and signing and releasing Original Bills of Lading to charterers representative marked 'Clean on board Freight payable as per C/P'.

Freight payment and settlement to be both basis Bill of Lading quantity. Charterers privilege to deduct commissions and estimated despatch from initial freight payment.

If "Freight Prepaid" Bills are required, then release of Prepaid Bills are to be upon email bank confirmation including swift tracking number that 100% freight has been remitted.

Balance of freight together with demurrage/despatch, if any, payable latest 30 days after completion of discharge and receipt of owners laytime calculations and supports.

**Rider Clauses to the M/V**
**Charter Party dated:**

Clause 57.        (Continued)

Freight deemed earned pro-rata upon completion of loading discountless and non-returnable vessel and or cargo lost or not lost. Freight deemed to have been paid by charterers once received in owners designated bank account.

Master to insure that only cargo qualifying for clean/unclaused mates receipts. Otherwise as per C/P.

In order to clarify s/r conditions, it is a requirement from charterers a copy of original master bill of lading with their respective signatures. The Bill of Lading should be send prior to first payment in a PDF format once cargo is on board to charterers.

Charterers shall pay the owners any dead freight.

Bank details:

## **CLAUSE 58 – OVERTIME**

Should charterers or ship owner decide to call any overtime at load and discharge, overtime costs to be paid by party ordering same. Officer's and crew overtime always to be for ship owner's account.

If overtime is ordered by port authorities or the party controlling the loading and/or discharging terminal or facility all overtime expenses are to be for charterers account, except if such overtime is due to owner's negligence or fault. If the owners order overtime at loading port, the spread between the straight time and overtime only should be for owners' account.

## **CLAUSE 59 - CARGO SEPARATION**

Charterers cargo by grades to be stow by natural separations.

Charterers to endeavor to increase the quantity of soybeans to fill one full hold to avoid the need for an artificial separation.

If part cargo, ship owner to endeavor that charterers cargo shall not be loaded in the hold closest to the engine room/ bridge, always subject to vessels trim, stability and to Masters full satisfaction.

If part cargo, no other different cargo to be loaded in the same hold. If part cargo, vessel not to load any other cargo that may contaminate charterers cargo except previous approval. If the vessel is loading in the same vessel cargo that might put in danger charterers cargo, the owner must inform to charterers prior loading natural separation is required between charterers and other part cargo.

Vessel not to load at the same time any other cargo that might contaminate charterers' cargo.

Unless prohibited by Master on account of safe loading, safe stowing or trimming of the vessel, charterers cargoes to be first discharged out.

In case of part cargo, ship owner must consult with charterers in light of the expected combination in order to avoid delays related to combining the cargo.

Ship owner to ensure vessel's deck is clean of third party cargoes prior charterers cargo being loaded or discharged in order to avoid any possible contamination.

No cargo comingling allowed.

**Rider Clauses to the M/V**
**Charter Party dated:**

## CLAUSE 60 - FUMIGATION CLAUSE

Charterers have the right to fumigate cargo at load port upon completion of loading and prior to departure.  Time for fumigation to count as laytime but shifting from berth to usual anchorage or designated place for this purpose not to count and shifting expenses to be for owners account. i.e. Owners to pay for one shifting from berth to designated fumigation place. Any additional shifting to lay berth(s) or other designated place beyond one shifting to be for charterers' account.

Fumigation method must comply with recommendation on the safe use of pesticides in ships as per IMO code.

In the event that grain or grain products are required to be fumigated, then ship owner are to cooperate and expedite such fumigation and undertake to issue "clean Bills of Lading" provided local authorities issue clean grain certificates.

Owner warrants the vessel and its holds can be fumigated. If accepted by the competent authorities at both load and discharge ports the vessel will be loaded/unloaded without evacuation of crew provided chemical agent used for fumigation allows crew members to remain onboard (as per local health regulations if applicable). Otherwise if crew members have to be evacuated from the vessel, transport and hotel expenses to be for charterers account.

Fumigation to be in charterers risk / time and account.

## CLAUSE 61 – LAYTIME

Loading:
8,500 metric tons per weather working day (of 24 consecutive hours) Saturdays, Sundays, Holidays excluded even if used. Time from 24:00 hours Friday or 17:00 hours on a day prior to a holiday until 07:00 hours Monday or 08:00 hours next working day not to count even if used. Otherwise as per Charter Party.

Discharge:
5,000 metric tons per weather working day of 24 consecutive hours Sundays, Holidays included, excluding Super Holidays, as per BIMCO holidays. Otherwise as per Charter Party.

If grabber vessel, charterers have the option to free use grabs as on board subject to owners final approval.

Time to count up to the immediate time after finishing unloading. Holds to be machine/payloader/broom cleaned.

First opening and last closing of hatch covers to be done at ship owner time, risk and expense and performed by vessel's crew. If local regulations require shore labor for such task, same to be paid by ship owner. If there is more than one Charterers subsidiary loading in one vessel the time used to first opening and last closing of hatch covers will be divided between each subsidiary per each corresponding hold.

In case of rain time for opening and closing for ship owner's account.

Laytime non-reversible, Superholidays excepted.

The laytime demurrage/despatch calculation to be based on the quantity for which freight is paid.

For both ports, time used prior start of laytime not to count.

**Rider Clauses to the M/V**
**Charter Party dated:**

## CLAUSE 62 – SHIFTING

Shifting expenses to be for charterers' account, except first shifting from anchorage to loading berth.

Shifting time from anchorage:
If the vessel shifts from the anchorage or waiting place outside the port limits either directly to the first loading or discharging berth or to a lay berth or anchorage within the port limits the cost of that shifting shall be for ship owner's account and time so used shall not count even if vessel is on demurrage.

Cost of shifting from lay berth or anchorage within the port limits to first loading or first discharging berth to be for ship owner's account, time not counting. Meaning owners will pay for first shifting but not any additional shifting.

Shifting in and out of the same berth if vessel is required by charterers/receivers to shift out of the loading berth or the discharging berth and back to the same berth, one berth shall be deemed to have been used, but shifting expenses from and back to the loading or discharging berth so incurred shall be for charterers account and laytime or time on demurrage shall count.

Any warping at load and/or discharge if required to be for owners' time/risk/expense.

Overtime expenses for vessel's officers and crew shall always be for owners' account.

## CLAUSE 63 - LAYOUT WINDOW

Deleted

## CLAUSE 64 - DEMURRAGE

To be declared upon nomination of final vessel performer in line with the going market rate for this trade route as follows:

At load and discharge:
Up to maximum USD xxxxx per day pro-rata half despatch laytime saved both ends laytime non reversible.

## CLAUSE 65 - DUES AND TAXES

Any taxes/dues on cargo to be for shippers/receivers charterers' account.

Any taxes/dues/wharfage/dockage on vessel and/or freight to be for owners' account.

Any dock dues at the discharging port shall be for owners account. Any berth dues and any other charges shall be or the owners account.

Any time lost due to vessel's flag restriction / blockade by local government, to be for owners risk, time and expenses.

ISPS charges both ends to be for owners' account.

## CLAUSE 66 - AGENTS

Charterers' agents both ends.

Owners to appoint charterers nominated agents for all port owners paying customary fees.

11

**Rider Clauses to the M/V**
**Charter Party dated:**

Clause 66.        (Continued)

It is understood owners are responsible to pay for usual/customary port charges/expenses/vessel's disbursements, as well as ship's husbanding matters.

## CLAUSE 67 - OVERAGE INSURANCE

Overage premium for vessels over 15 years will apply and same to be for owners account against original insurance vouchers to be presented to owners not later than 15 days after vessel discharge.
Maximum permitted age 20 years old.

Extra insurance on cargo due to vessels age/flag/class or ownership if applicable to be for owners' account.

## CLAUSE 68 - BILL OF LADING AND CHARTER PARTY INSTRUCTIONS

Understanding that charterers are acting on behalf of its subsidiaries, in order to fix transportation to them separate Bill of Lading to be issued independently to each charterer.

Ship owners not to clause / delay release of Bills of Lading for alleged dead freight. Failing any amicable and commercial settlement, such dispute to be referred to arbitration.

In the event the original bills of lading are not available on vessels arrival at discharge port, owners to release the entire cargo and allow discharging against presentation of letter of indemnity (L.O.I) issued by charterers, on charterers letterhead, in owners P and I Club wording, to be signed by charterers only (with no bank guarantee).

Subject to owners' final approval, charterers have option to place one original Bill of Lading onboard at load port for delivery to charterers/receivers. Or their representative, on vessel's arrival at discharge port against which cargo is to be released, provided the appropriate P and I recommended wording is included in the Bill of Lading this to be subject to owners/masters approval.

Bills of lading weight to be determined as per shore scale figures.

Master to ensure that only cargo qualifying for clean/unclaused Mates Receipts. Otherwise as per C/P.

Ship owners to issue separate original, stamped & signed invoices with full description of calculations, owner company name, owner company logo, owner company tax number, invoice number, full address and owner company stationary invoice.

## CLAUSE 69 - SWELL CLAUSE

Swell clause to be split time 50/50 between owners and charterers and time not to count for the first 48 hours in case of swell only.

## CLAUSE 70 - CONFIDENTIALITY CLAUSE

This charter party to remain private and confidential between all parties involved in the negotiations.

All info on this trade is strictly confidential and not to be revealed or compromised by any party involved in this trade.
All the confidential information contained in this charter party and related to the execution of this contract not to be shared with any other company division or external party. If the owner or

**Rider Clauses to the M/V
Charter Party dated:**

Clause 70.        (Continued)

disponent owner is a grain operator, this information contained here not to be shared or disclosed with another grain trading business unit within or out the same company. All info to stay within owners and supporting departments, unless required for the execution of this Charter Party, in which case ship owner to request charterers written approval, same not to be unreasonably withheld.

## CLAUSE 71 - ASIAN GYPSY MOTH CLAUSE

Ship owner to guarantee vessel meets all agriculture and plant protection local regulations plus the quarantine office regulations. Furthermore, owners guarantee the vessel is free of any Asian gypsy moth eggs or larvae or any form of Asian gypsy moth life. Should vessel be found to have the same after tendering Notice of Readiness, the Notice of Readiness to be considered invalid. Notice of readiness to be retendered after vessel is cleared by authorities.

## CLAUSE 72 - FORCE MAJEURE & CROP FAILURE

Owners shall be bound before and at the beginning of the voyage to exercise due diligence to make the vessel seaworthy and to have her properly manned, equipped and supplied.

Neither party shall be considered to be in default in the performance of any of its obligations under this charter party when and to the extent that such failure of performance or its inability to deliver or accept services hereunder shall be due to force majeure.

Only in case charterers cannot provide a cargo due to a grains crop failure in the origin (s) nominated in this agreement during the 2015/2016 crop season and lack of old crop stocks of sufficient quality as evidenced by shippers' and charterers' written declaration, charterers to advise owners an alternative load port minimum 60 days prior the intended shipment month. The parties shall contemplate and agree on the freight rate spreads at the then prevailing freight market for the particular shipment and alternative port in question. If no alternative port is nominated or no agreement is reached prior the nomination of the vessel, owners shall be discharged from their contractual obligations regarding the nominated vessel and shall be entitled to claim damages caused by charterers' failure to load a cargo on board the vessel.

## CLAUSE 73 - RELET OF CARGO

In case of cargo relet ship owner to advise charterers head owners together with vessel nomination.

## CLAUSE 74 - ASSIGNMENT

Charterers to have the right to assign or novate this agreement to another charterers subsidiary or to the shippers with ship owner's prior approval, same not to be unreasonably withheld. Subject to ship owner having credit lines in place for the subsidiary or shippers in question or to be fully backed with a parent company guarantee.

Ship owner to have the right to assign or novate this agreement to another owner subsidiary prior charterers approval, same not to be unreasonably withheld, subject to owners having credit lines or approval in place for the subsidiary in question or to be fully backed with a parent company guarantee.

The rest of the terms and conditions as per Norgrain Charter Party, with logical amendments and the above changes.

## CLAUSE 75 - BIMCO ISPS/MTSA Clause for Voyage Charter Parties 2005

(a)(i) The Owners shall comply with the requirements of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) relating to the Vessel and "the Company" (as defined by the ISPS Code). if trading to or from the United States or passing through United States waters, the Owners shall also comply with the

**Rider Clauses to the M/V**
**Charter Party dated:**

Clause 75.        (Continued)

requirements of the US Maritime Transportation Security Act 2002 (MTSA) relating to the Vessel and the "Owner" (as defined by the MTSA).

(ii) Upon request the Owners shall provide the Charterers with a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) and the full style contact details of the Company Security Officer (CSO).

(iii) Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Owners or "the Company"/"Owner" to comply with the requirements of the ISPS Code/MTSA or this Clause shall be for the Owners' account, except as otherwise provided in this Charter Party.

(b)(i) The Charterers shall provide the Owners and the Master with their full style contact details and, upon request, any other information the Owners require to comply with the ISPS Code/MTSA.

(ii) Loss, damages or expense (excluding consequential loss, damages or expense) caused by failure on the part of the Charterers to comply with this Clause shall be for the Charterers' account, except as otherwise provided in this Charter Party, and any delay caused by such failure shall count as laytime or time on demurrage.

(c) Provided that the delay is not caused by the Owners' failure to comply with their obligations under the ISPS Code/MTSA, the following shall apply:

(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed ii a port facility or any relevant authority under the ISPS Code/MTSA.

(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code/MTSA shall count as laytime or time on demurrage, unless such measures result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' managers.

(d) Notwithstanding anything to the contrary provided in this Charter Party, any costs or expenses whatsoever solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code/MTSA including, but not limited to, security guards, launch services, vessel escorts, security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' managers. All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.

(e) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

Footnote: This Clause replaces previously published ISPS Clause for Voyage Charter Parties AND the US Security Clause for Voyage Charter Parties, both of which are now officially withdrawn.

## CLAUSE 76 - STEVEDORE DAMAGE CLAUSE

Any stevedore damage done to the vessel at loading and discharging ports to be settled directly between owners and stevedores; however charterers to assist owners provided Master attempts to obtain written acknowledgement from stevedores and places stevedores on notice.

Charterers will endeavor their best efforts to assist owners to settle stevedore damages, but charterers ultimately held harmless

**Ports and berth damages:**
Any damages caused to the port or berths of the vessel, shall be paid by the shipowner unless

14

**Rider Clauses to the M/V
Charter Party dated:**

Clause 76.        (Continued)

such the damage is caused by a personal act, omission or default of the charterer, their agents and stevedores.

**Personnel liability:**
The charterers shall not be held responsible for loss or damage to personal property or for any injury suffered on the vessel by the shipowner, or any member of his party or any third party, during the term of this charter unless such loss, damage or injury is the direct and proximate result of charterers sole negligence.

## CLAUSE 77 - INSURANCE POLICIES

**Vessel insurance:**
The shipowner agrees to keep the vessel fully insured against fire, marine and collision risks and with protection and indemnity coverage for the full term of the charter period. The charterers shall not be liable for any such loss or damage covered by such insurance. Failure by the ship owner to provide such insurance will burden him with the same responsibility as if the vessel were so insured.

**Cargo insurance:**
The ship owner agrees to keep the cargo fully insured against all risks and with protection and indemnity coverage for the full term of the charter period. The charterers shall not be liable for any such loss or damage covered by such insurance. Failure by the shipowner to provide such insurance will burden him with the same responsibility as if the vessel were so insured.

## CLAUSE 78 - BIMCO ISM CLAUSE

From the date of coming into force of the International Safety Management (ISM) code in relation to the vessel and thereafter during the currency of this charter party, the ship owners shall procure that both the vessel and "the company" (as defined by the ISM code) comply with the requirements of the ISM code. Upon request the ship owner shall provide a copy of the relevant Document of Compliance (DOC) and Safety Management Certificate (SMC) to the charterers.

Except as otherwise provided in the charter party, ship owner shall be liable to charterers for all losses (including lost profits), damage (direct and consequential), expense or delay arising out of a failure on the part of the ship owners or "the company" to comply with any provision of the ISM Code or any rules or regulations promulgated pursuant thereto. Ship owners expressly agree to indemnify and hold charterers harmless with respect to any claims asserted against charterers as a result of a failure on the part of ship owner or "the company" to comply with any provision the ISM Code or any rules and regulations promulgated pursuant thereto.

The ship owner shall be liable for loss, damage, or any penalties imposed by the authorities arising or resulting from unseaworthiness, or for his failure to secure that the ship is properly manned, equipped and supplied or for delay in delivery of the charter if the loss or damage is caused by improper or negligence stowage of the charter. The ship owner will also be liable for the acts of his agents and/or crew.

## CLAUSE 79 – FREIGHT BENEFICIARY

If freight beneficiary of this charter party is different than the owners/disponent owners of the vessel, then "written declaration/no objection letter" from head owners/disponent owners to be asked for charterers paying the freight to the nominated "freight beneficiary" in accordance with OFAC clause which is as incorporated in the charter party.

15

**Rider Clauses to the M/V**
**Charter Party dated:**

### CLAUSE 80 - O.F.A.C CLAUSES

Performing vessel(s) always to be in conformity with applicable United States Law and United Nations proclamations prohibiting certain flags/ownership/management from participating in trade covered by this charter, including restrictions imposed by the US Treasury Department, Office of Foreign Assets Control (OFAC) and the US Commerce Department, Bureau of Industry and Security (BIS) and United Nations proclamations prohibiting certain flag/ownership/management from participating in trade covered by this charter.  Owners responsible for all cost/consequences if in violation of this warranty.

Owners guarantee the vessel is free from any obligation, encumbrance, claim or lien, of a financial nature or otherwise, that would interfere in any way with the vessel's performance of this voyage and/or the delivery of the cargo with the utmost despatch. In the event the vessel/ cargo is liened or arrested during the currency of this charter party (or after completion of discharge in respect of the cargo) the owners are to take immediate action to release vessel/cargo from any such lien or arrest and to remain fully responsible for the cost or damages caused as a result of any lien or arrest or interruption of the vessel's performance under this charter party.

### CLAUSE 81 BALLAST WATER MANAGEMENT CLAUSE

Owners warrant that the vessel shall comply with all mandatory ballast water requirements.  The owners shall assume liability for and shall indemnify, defend and hold harmless the charterers against any loss and/or damage (excluding consequential loss and/or damage) and any expenses, fines, penalties and any other claims, including but limited to legal costs, arising from the owners' failure to comply with any such provisions.
Should such failure result in any delay then, notwithstanding any provision in this charter party to the contrary, the period of such delay shall not count.

### CLAUSE 82 BUNKER FUEL SULPHUR CONTENT CLAUSE

Owners confirm they are aware of the maximum sulphur content requirements of any emission control zone the vessel may be required to enter during the performance of this charter.  Owners warrant that owners and the vessel shall comply with all applicable requirements of any emission control zone and shall use fuels (which term shall include all heavy fuel oils, marine gas oils and marine diesel oils as applicable) of such specifications and grades to ensure compliance with these requirements.
For the purpose of this clause, "Emission Control Zone" shall mean areas as stipulated in Marpol Annex VI and/or zones and/or areas regulated by regional and/or national authorities such as, but not limited to, the EU, the US Environmental Protection Agency and the California Environmental Protection Agency.  Owners shall indemnify, defend and hold charterers harmless in respect of any direct loss, liability, delay, fines, costs or expenses arising or resulting from owners' failure to comply with this clause.

### CLAUSE 83 - BILGE PUMPING CLAUSE

Owners warrant that vessel bilges are free of all residues and shall remain in full working order during the currency of this voyage. If charterers require/request same, owners further warrant that the vessel bilges shall be pumped regularly throughout the voyage but minimum at least twice a day, weather permitting and master shall keep a sounding book as record of such pumping. The record book shall be made available to charts as part of documentation for final freight/voyage accounting/settlement.

**Rider Clauses to the M/V
Charter Party dated:**

## CLAUSE 84 - CESSER CLAUSES

A) Deleted
B) If the vessel is under charter to the party described as "owner", then the "owner" shall defend, indemnify and hold the charterer harmless from any lien on cargo exercised by the registered headowners of the vessel arising from failure of the "owner" to fulfill its obligation to the vessel's registered headowners under the head charter.
C) In the event a lien is asserted upon the cargo and/or freight to be carried or paid hereunder, charterer shall have the liberty to pay such freight, which would normally be payable to the owners hereunder, directly to the head owners of the vessel and such amounts so paid shall be credited against any freight otherwise payable by charterer under this charter party.
D) Any indemnity for proven damages which may be payable to owners for non-performance of this charter party shall in no event exceed the estimated amount of freight.

## CLAUSE 85 - FOLLOWING CLAUSE TO APPLY (FROM NAEGA ATTACHMENTS ADDENDUM NO. 1, CLAUSE 6)

If vessel nominated under this contract also lifts additional commodities (grain and/or oilseeds), regardless of whether or not such commodities are covered by loading rate guaranties, the following g shall apply:

(a)      For commodities delivered to vessel at the same berth:
The "time allowed" shall be arrived at by dividing the tonnage loaded under this contract by the daily rate stipulated in Clause 1 above. A calculation of "total time used" for all the commodities loaded at the berth shall be made, in which any such time in excess of the "time allowed" shall be computed as time on demurrage. For "total time used" shall then be pro-rated to the tonnage loaded under this contract. The "time allowed" shall be deducted from this pro-rated figure to arrive at the time on demurrage or time saved under this contract.

(b)      If the commodities other than those under this contract are delivered at (an) other berth(s) in the same port:
The waiting time ("waiting time") at the first berth shall be pro-rated among all the contracts for the commodities to be delivered to the vessel.
The time spent getting to and used at the first berth ("berth time") shall be pro-rated among the contracts loaded at the first berth.
The waiting time at the second berth shall be pro-rated among all remaining contracts for the commodities yet to be delivered to the vessel.
The berth time at the second berth shall be pro-rated among the contracts loaded at the second berth.
Waiting time and berth time for berths subsequent to the second berth shall be treated in a similar manner as for the second berth.
Waiting time shall cease and berth time begin when pilot is on board and vessel lifts anchor in order to proceed to the loading berth.
Berth time shall cease when loading is completed at that berth and waiting time shall begin when vessel drops anchor in waiting area after having sailed from berth.

If no waiting time is involved between berths, berth time at the next berth shall begin when vessel sails from the previous berth.

If, between the time that the vessel is ordered into a berth and the time of completion of loading at that berth, the vessel is ordered into one or more other berths, subsequently incurred waiting time at this (these) other berth(s) shall not count.

**Rider Clauses to the M/V**
**Charter Party dated:**

Clause 85.        (Continued)


(c)        If the commodities other than those under this contract are delivered at (an) other port(s):

The laytime statement shall be prepared as if the vessel had not called at another port. If the commodities under this contract are loaded at the second or a subsequent port, the words "filing of the vessel in accordance with Clause 8 of the North American Export Grain Association, Inc., FPB Contract No. 2 ("NAEGA 2") in Clause 1(a) above shall be deemed to read "presentation of the vessel's passes". If, however, the first and second or subsequent ports have been nominated by the seller of the grain under this contract, laytime for the second and/or subsequent port(s) shall commence upon vessel's arrival at that or the subsequent port(s); except that, if vessel fails inspection at such port(s), laytime shall cease to count until vessel passes.


IN AGREEMENT,

| Signature (Owners) | Signature (Charterers) |
|---|---|
|  |  |
|  |  |

18